## In re STEFFENSEN.

No. 5946.   Decided April 19, 1938.   (78 P. 2d 531.)

*K. K. Steffensen,* of Salt Lake City, pro se.

*Wesley G. Howell, A. E. Bowen,* and *L. O. Thomas,* all of Salt Lake City, for Utah State Bar.

HANSON, Justice.

Thomas C. Bevan complained to the Utah State Bar that attorney Steffensen, employed by Bevan to collect a sum of money due the latter, had received and appropriated to his own use the sum of $60 thereof and had refused to pay the same to Bevan on demand. A formal complaint was filed. In answer thereto the accused admitted the employment and collection as charged, but claimed certain set-offs for fees earned in other matters wherein he had been employed by Bevan and also laches and delay to complain during more than four years, with full knowledge, whereby the attorney was prejudiced in his defense by his loss of files and a failing memory of the facts.

From admissions in the answer and the undisputed testimony, it appears that Bevan employed Mr. Steffensen in September, 1930, to sue for, if necessary, and collect a demand for damages against Pauline Pingree and her father, whose automobile she drove, for injuries to Bevan's automobile in a collision between the two cars. The Continental Agency Company was either insurer or agent for the insurer of the Pingree machine. Bevan paid the attorney a retainer fee of $25 and $6.50 costs to bring suit. A summons was issued and served on the Pingrees. Immediately the insurer offered $50 in settlement, to which Bevan consented. However, the attorney held out and a little later, on November 11, 1930, the claim was settled for $60, which was paid on that date by the insurer's check to the attorney. It is admitted that the attorney did not immediately notify his client of the settlement and also that he never has in fact paid over to the client any part of the money so collected. Bevan testified that frequently during the months of No-

vember, 1930, to March, 1931, inclusive, he visited or met the attorney and inquired about the claim and that every time he so inquired he was informed by the attorney that nothing had been done, no money collected, no progress made. Bevan's wife corroborated her husband as to one or more of these inquiries and the response thereto. The attorney denies this particular testimony and claims that he never saw or met Bevan, and was never able to communicate with him from the time he collected the money until some time after May 5, 1931, and he never met Mrs. Bevan before the time of the hearing. That he made inquiries for Bevan after collecting the money, but was never able to come in touch with him. In this connection, the following, from a voluntary statement by the attorney at the hearing before the investigating committee, is enigmatic to say the least:

"Now, when I received the check,—and this is the matter in dispute, and I won't go through the whole story,—but when I received the check I cashed it, and immediately I went to see Tom at Lettieri's at lunch, and we played 'smooker'.

"I went to the post office. I didn't know where he lived, but I think I went to the post office and was informed that he was out of town, and I never heard a thing from Mr. Bevan and never got a chance to tell him that I had accepted the check for $60 instead of $50."

It appears that Bevan was a letter carrier employed by the post office department, which explains the resort thither for information. But why the pains to inquire at all for Bevan's whereabouts when the attorney had met him personally at lunch and played "smooker" with him immediately after receiving the check, and had not availed himself of the opportunity then afforded to tell Bevan of the receipt of the check? And why not then have offered to settle with Bevan for the collection made on his behalf? But the attorney persevered further in stating that:

"In the early part of 1931 I had to go to California in relation to business of a company I was secretary and treasurer of. I was gone from January 7th until around March 27th. Right after Conference

I went down again and I didn't get back until the 5th of May. And around the time I got home, Mr. Bevan came to the office and asked about the Pingree case. I told him I had received a check for $60 and he asked me for the money."

Here was an express admission that the money was demanded of him by his client as early as May 5, 1931, and no settlement followed. There was also undisputed testimony that the money was repeatedly demanded on Bevan's behalf. by other attorneys whose efforts were invoked by him, and also that prosecution from the county attorney's office was threatened for a time. All without avail.

To the solicitations of payment from other attorneys, Mr. Steffensen made no denial of liability. On the contrary, he frankly admitted to Attorney Edgar C. Jensen that he had collected the money, put it in his safe, and kept it for a time, when financial stress had compelled him to use it. He offered at different times to give his note for the amount, and to begin small monthly payments, which he never performed. In fact, on the hearing before the Disciplinary Committee he frankly stated:

"My position is this. Since I have become better versed in the matter I believe I am guilty of what you would call today unprofessional conduct. What I should have done when I saw Bevan was to bill him for what I claimed. I believe I should be punished, but I don't believe I am of the type of person who has the attitude of beating clients out of money. I am willing to submit this, if it meets your approval: I am willing to accept a suspension of ninety days, beginning June 1st."

In so far as the defense of laches pleaded in defendant's answer is concerned, we do not find it sustained by the facts in the record. As soon as the collection by the attorney was known to the client, the latter was reasonably active thereafter in bringing forward his insistence upon a settlement from the attorney. When his own efforts failed, he enlisted the friendly efforts of other attorneys and the county attorney's office. When a man has employed and paid one attorney to make a collection, he does

not need employ and pay another attorney to collect from the first in order to demonstrate an earnestness and sincerity in desiring to get possession of his own money. The matter was kept before Mr. Steffensen's attention, if not constantly, at least with reasonable continuity from the time it was known he had collected on the Pingree claim. Such delay as occurred, in pressing the claim, was due to or contributed to by the attorney's own necessitous circumstances and was largely in his interest. If he lost files, or his memory has dimmed because of the delay, it would seem to be a misfortune against which he might have guarded by a reasonable appreciation of the outcome of his failure to account for and pay what was due to his client.

As regards the matters of set-off claimed by defendant in his answer, we have carefully considered the testimony of both parties and are of the opinion that the matters relied on were inconsequential and that whatever was done had no appreciable value. No charge was made at the time, and no notice given that a fee was expected. Concerning one of them—a small claim against Bevan's father's estate in Chicago—Mr. Steffensen wrote perhaps two letters to attorneys which accomplished nothing and Bevan finally wrote a letter himself which gained some recognition. The other was the incident of a police parking ticket Bevan got for parking his automobile too long in one place. Concerning one of these incident, Mr. Steffensen testified at the hearing that, "It was a very little affair." It seems likely that the other was equally microscopic. No bill was rendered in either instance. Their recollection must have been an afterthought to aid in balancing off Bevan's claim for the money collected in the Pingree matter. Concerning those items, he testified:

"I think this complaint [i. e., to the Bar Association] was filed in May of 1935. Since then I have thought the matter over, and I believe I was entitled to a fee for representing Mr. Bevan in the Chicago estate, and for handling the police court matter. It was a very little affair but I don't believe I was entitled to do it for nothing."

Thus, it appears there was no thought of making a charge for either of the two matters until after the client's complaint against him had been lodged with the bar association. Hence the delay and laches was that of the attorney rather than that of the client.

Notwithstanding the record supports the view that the attorney's conduct in this matter has been highly censurable and grave, yet we are further persuaded from the record that this has been partly due to the pressure of economic stress and financial ills against which he felt ■ himself unable to stand. This does not excuse his conduct, nor relieve against the necessity of adequate discipline in the interest and for the protection of the public. But it is a circumstance that may be considered by the court in its discretion in mitigation of the punishment that should be inflicted. *Egan* v. *State Bar of California,* Cal. Sup., 75 P. 2d 67. The worst feature of the case is the deceit and denials for several months that he had collected anything, until the client himself discovered the contrary by inquiry of the insurer itself.

Inasmuch as the defalcation and breach of trust for which Mr. Steffensen is by the case in hand held to answer occurred back in November, 1930, some two years before a like offense occurred and which gave rise to the charges against Mr. Steffensen which were heard in this court in *Re Steffensen,* 85 Utah 380, 39 P. 2d 722, ■ we think that six months' suspension from practice of the law will be quite sufficient. Had the attorney's delinquency occurred subsequent to his first suspension, we think that would have shown a more willful disregard, not alone of his oath as an attorney, but also of his duties and obligations to his client, and we then would have felt that the recommendation by the Board of Bar Commissioners in this case would have been fully justified.

It is the judgment of the court that the said attorney, K. K. Steffensen, be and he is hereby suspended from the practice of law for the period of six months from the going

down of the remittitur herein to the Utah State Bar, and until he is reinstated upon application to that body. He is required to pay to the client, Thomas C. Bevan, the sum of $56 found due him by the Disciplinary Committee with interest thereon at 8 per cent per annum from January 1, 1931, and also to pay to the Utah State Bar all costs expended by it in its prosecution of the charges. During his period of suspension he is forbidden to practice law, directly or indirectly through association with another attorney, from maintaining an office as an attorney and from holding himself out as entitled to practice law in any of its phases.

FOLLAND, C. J., and MOFFAT, WOLFE, and LARSON, JJ., concur.