In the Matter of HARVEY B. BURRUS, No. 43739—258 S. W. (2d) 625.

Court en Banc, June 8, 1953.

*Charles V. Garnett* for petitioner.

*Frank W. Hayes* for Bar Committee.

PER CURIAM:—Following judgment and sentence rendered upon plea of guilty in the United States District Court for the Western District of Missouri to the charge of willfully and knowingly failing to file Federal income tax returns for the years of 1949 and 1950, Harvey B. Burrus, a licensed attorney of Missouri, has voluntarily submitted himself to this court for such disciplinary action as we may deem just.

Section 145 (a) of the Internal Revenue Code, Title 26 U.S.C.A., under which Mr. Burrus was convicted, makes it a misdemeanor, punishable by a fine of not more than $10,000, or imprisonment for not more than one year, or both, for any person required by law to make a Federal income tax return to willfully fail to make the same. The information to which he pleaded guilty charged in the first count thereof that his gross income for the year 1949 was $13,404.00, by reason of which he was required by law to make a return thereof on or before March 15, 1950, and that he willfully and knowingly

failed so to do. The second count alleged his gross income for the year of 1950 to be $17,460.12, and that he willfully and knowingly failed to make a return thereof on or before March 15, 1951. His plea was entered on April 6, 1953. The judgment and sentence, entered on the same day, committed him to the custody of the Attorney General for imprisonment for a period of ninety days on Count I of the information. On Count II imposition of sentence was suspended and he was placed on probation for a period of two years. It was further adjudged that he be assessed a fine of $5,000, and he was granted a stay of execution on the sentence of imprisonment until May 4, 1953. On the 8th day of April, 1953, and after obtaining approval of the General Chairman of Bar Committees, he, through his counsel, Hon. Charles V. Garnett, filed a petition in this court, which, after reciting the above facts, waived issuance of all process, requested permission to appear voluntarily before the court, and submitted himself to the court "for the purpose of having this court judicially determine what, if any, disciplinary action should be taken against him * * *." The cause was thereupon [626] set for hearing before the court en banc, on April 13, 1953. Present at this hearing were petitioner, his counsel, and Hon. Frank W. Hayes, counsel for the Advisory Committee to the General Chairman of Bar Committees. The evidence was heard and the cause duly submitted to the court for determination.

From the evidence adduced, it appears that when income tax returns for the year of 1948—no charge was filed for his failure to make a return for that year—were due, Mr. Burrus' records were incomplete and he was pressed for time. He sought and was granted an extension of time in which to file that return, but eventually failed to file it. His situation thereupon progressively grew more perplexing and resulted, as stated, in his intentional failure to file returns for the years of 1949 and 1950. Finally, while talking to an internal revenue agent about another matter, he related the entire matter to the agent. Until he gave the information to the agent in this manner, the Revenue Department had not taken note of his delinquencies. Since that time, he has actively and willingly co-operated with the Federal agents in an effort to compute the amount of his delinquencies and to discharge the same.

The record is also clear that Burrus has at all times borne an excellent reputation among the bench and bar both in his personal and professional capacities and attainments. No suggestion is made of any prior professional or personal misconduct. His attitude before this court was that of a man who realized the seriousness of his offense and sincerely wanted to make all amends possible.

Our Rule 4.47, governing the conduct of lawyers, provides, among other admonitions, that a lawyer shall not, "by any misconduct, commit any offense against the laws of Missouri or the United States

of America, which amounts to a crime involving acts done by him contrary to justice, honesty, modesty or good morals; \* \* \*." And, although this is not a proceeding under the statutes of this State regulating the rights and duties of attorneys as found in Chapter 484, RSMo 1949, V. A. M. S., it should be here noted that § 484.240 of said chapter provides: "If the charge [against an attorney] allege a conviction for any criminal offense involving moral turpitude, the court shall, on production of the record of such conviction, remove the attorney so convicted or suspend such attorney from practice for a limited time, according to the nature of the offense, as the court may deem just, and without further trial. \* \* \*"

The essential question for determination is whether the offenses of which Mr. Burrus was convicted amount to conduct contrary to justice, honesty or good morals; which is to say, do they involve moral turpitude? Neibling v. Terry, 352 Mo. 396, 177 S.W. 2d 502, 503, 152 A.L.R. 249; In re McNeese, 346 Mo. 425, 142 S.W. 2d 33.

The identical question was before the Court of Appeals of Maryland in 1946 in the case of Rheb v. Bar Association of Baltimore City, 186 Md. 200, 46 A. 2d 289. In that case an experienced attorney had pleaded guilty to willful failure to make Federal income tax returns for the years of 1940, 1941 and 1942 and failing to keep records for the same periods in violation of § 145 (a), Title 26 U.S.C.A., Int. Rev. Code. The Bar Association thereupon instituted a proceeding against him which had resulted in a judgment in the lower court ordering his disbarment, from which he had appealed to the Court of Appeals. That court, in affirming the judgment, said: "He admitted that he made $6,500 in 1939 (as to which limitations prevented indictment), that he made from $7,500 to $10,000 in each of the years 1940 and 1941, and 'a top of $7,500 in 1942.' He admitted knowing the requirements of law in regard to returns, testified that he made returns for others, attributed his own failure to 'just pure neglect.' These admissions, coupled with his admitted failure to keep adequate records, justify a finding that he deliberately failed to make returns or keep records, for the purpose of cheating the Federal Government and the State of Maryland out of taxes justly due. We think it is immaterial whether the federal crime is to be classed as a misdemeanor or a felony, an act of omission or commission. Such conduct might properly be characterized as fraud or deceit, even if it did not involve moral turpitude.

"However, the authorities support the proposition that a crime of this character, even though not a felony, involves moral turpitude. It is generally recognized that crimes in the category *crimen falsi* involve moral turpitude. See Bradway, 'Moral Turpitude as the Criterion of Offenses that justify Disbarment.' 24 Cal. L.R. 9. In re Diesen, 173 Minn. 297, 215 N. W. 427, 217 N. W. 356, an attorney was disbarred on the strength of a conviction of the misdemeanor of

making a false income tax return. See also In re Wiltsie, 109 Wash. 261, 186 P. 848, and In re Peters, 73 Mont. 284, 235 P. 772, involving false reports.''

We are constrained to agree with the reasoning in that case. Mr. Burrus, aged 51 years, was admitted to the bar in 1923. It is conceded that he had engaged extensively in the practice of law since his admission and that he well knew and appreciated the seriousness of the offenses he was committing and the probable consequences thereof. We think it quite clear and, accordingly, hold that his intentional failure to make returns as the law required constituted conduct involving moral turpitude within the meaning of both the statute, § 484.240 RSMo 1949, V.A.M.S., and our Rule 4.47.

The extent to which he should be disciplined has been given careful consideration. We are mindful that the purpose of proceedings of this character is not to punish the attorney. Rather is it to preserve the courts from the ministration of persons unfit to serve therein as attorneys. In re Graves, 347 Mo. 49, 146 S.W. 2d 555; In re Ellis, 359 Mo. 231, 221 S.W. 2d 139, 142. The fact that his derelictions were committed in his personal capacity as a tax-subject citizen rather than in his professional capacity has some bearing upon the ultimate issue of his fitness to continue in the practice. The confession of his derelictions to the Federal authorities at a time when no accusations had been made against him shows that the matter weighed heavily upon his conscience. His active co-operation in expediting disposition of the criminal charge filed against him; his prompt submission of himself to this court for disciplinary action, and his demeanor at the hearing have convinced us that he is sincerely repentant. It is our considered judgment that a suspension from the practice of law for a period of one year from the date of the filing of his petition herein, to wit, April 8, 1953, will serve the ends of justice.

It is accordingly so ordered and adjudged. All concur.