[S. F. No. 19053.   In Bank.   Feb. 19, 1957.]

In re VINCENT W. HALLINAN, Member of State Bar of California.

James C. Purcell and Benjamin Dreyfus for Petitioner.

Leo M. Cook, John E. Nelson and Garrett H. Elmore for Respondent The State Bar.

THE COURT.—Vincent W. Hallinan was convicted of violating section 145, subdivision (b), of the Internal Revenue Code (26 U.S.C. § 145, subd. (b)), by "wilfully and knowingly filing false and fraudulent income tax returns." He did not appeal, and the time for appeal having elapsed, The State Bar filed with this court a certified copy of the indictment and judgment of conviction and asked that he be disciplined.

After a hearing before this court the matter was referred to the Board of Governors of The State Bar for hearing and recommendation on the question whether the facts and circumstances surrounding the commission of the offense of which he was convicted involved moral turpitude. (*In re Hallinan,* 43 Cal.2d 243 [272 P.2d 768].)

After a hearing before a subcommittee of the Board of Governors the matter was reviewed by the Board of Governors of The State Bar, who (a) found that the facts and circumstances surrounding the commission of the offense of which petitioner was convicted involved moral turpitude, and (b) recommended his suspension from the practice of law for a period of three years.

These two questions are presented for our determination:

First: *Does the evidence sustain the finding of the Board of Governors that the facts and circumstances surrounding the commission of the offense of which petitioner was convicted involve moral turpitude?*

*Yes.* The following rules are pertinent here:

■ (1) The burden is upon petitioner seeking a review of the Board of Bar Governors' recommendation to show that the findings are not supported by the evidence or that their recommendation is erroneous or unlawful. (*Tonini* v. *State Bar,* 46 Cal.2d 491 [2] [297 P.2d 1].)

(2) Criminal acts involving intentional dishonesty for the purpose of personal gain are acts involving moral turpitude. (*In re Hallinan*, 43 Cal.2d, *supra*, p. 247 [4].)

An examination of the record in accordance with the above rules discloses ample evidence that petitioner intentionally and for the purpose of personal gain filed false income tax returns for the years 1947 to 1950, inclusive.

The evidence discloses that petitioner was a member of a law firm consisting of himself, James M. MacInnis and Archer Zamloch during the years 1947, 1948, 1949 and 1950; that all professional income was not deposited in the firm account but that the three sometimes deposited funds in individual private accounts from which checks to the others were drawn and that sometimes fees were received and divided in cash. On other occasions fees received would be used to purchase cashier's checks and after being cashed the proceeds would be divided among the partners. No report of fees received in this manner by petitioner was ever made to the federal government.

The record discloses that petitioner during the period mentioned reported as his income from the partnership the sum of $15,647.79, when in fact he had received an additional sum amounting to $60,197.95, none of which was ever shown in any of his returns to the federal government as income received by him from the practice of law.

The evidence showed a consistent failure of petitioner to report his income, and a planned pattern of taking fees in cash with an intent not to report receipt of these fees as required by the Internal Revenue Act. It appeared that petitioner, over a period of at least four years, had intentionally pursued a course of conduct whereby he refused to report the total amount of his income from the practice of law to the federal government and endeavored, by failing to keep appropriate records and other practices, to prevent the federal government from ascertaining the true amount of his professional income.

Evidence was introduced to show that petitioner had received "side fees" for 1947 as high as $12,260.02 which were not reported as income.

No useful purpose would be served by setting forth in detail the voluminous evidence in the record. Suffice it to recite that for the year 1947 petitioner filed an income tax return in which he showed the receipt of $4,784.54 as "¼ of wife's net income for services as per agreement" under

Schedule E—"Income from partnerships, estates and trusts, and other sources"; reported a loss of $3,258.47 as "loss on stock market speculation" under Schedule D—"Gains and losses from sales or exchanges of capital assets, etc.," without filling out the required additional Schedule D for detail. Under Schedule C—"Profit (or loss) from business or profession," the return reported petitioner was a "lawyer" and his business address as "465 California St., San Francisco." The space for "business name" was left blank. There was no reference to the firm name of "Hallinan, MacInnis & Zamloch" nor the firm name of "Hallinan & MacInnis." Under Schedule C, the single figure $8,300 appears, indicating, in context, a reported income of $8,300 from this source. The return ignores the lines in the accompanying printed schedule for "total receipts," "net profit," and other itemization. No itemization was otherwise given. On another page of the return, personal deductions such as contributions to charity and excise taxes were claimed in the total of $956.80. Resulting net income, over all, was $8,869.27.

That the foregoing acts were done intentionally, knowingly and for the purpose of defrauding the government is demonstrated by evidence in the record of two conversations between petitioner and an office associate, Mr. Bruce Werhlof, who testified that petitioner told him "not to keep records" on cash which the firm received "because of tax problems," and that "they didn't keep records and they didn't keep accounts, and whatever bills had to be paid they just gave the girl enough money to pay the bills and they split the rest of the money"; further, that petitioner stated, "If there weren't any records there would be no way to check on taxes, the income, reported taxes." The witness also testified he had seen the partners divide cash fees among themselves.

Clearly the foregoing evidence supports the finding of the Board of Bar Governors, and it is unnecessary to set forth numerous other details in the record which support the questioned finding.

█ Petitioner presents a novel argument to the effect that the most that can be said of his conduct is that it constituted a violation of a federal criminal statute and that moral turpitude is not involved in the evasion of income taxes wherein the offender is "penalized for keeping his own money, not for taking someone else's."

Suffice it to say that this court in *In re Hallinan, supra,*

held that such argument is devoid of merit in this state. We said at page 248 [5]: "We see no moral distinction between defrauding an individual and defrauding the government (citation), and an attorney, whose standard of conduct should be one of complete honesty (citation), who is convicted of either offense is not worthy of the trust and confidence of his clients, the courts, or the public . . . since his conviction of such a crime would necessarily involve moral turpitude." (See also *In re Crosby*, 281 App.Div. 801 [119 N.Y.S.2d 478, 479]; *Rheb* v. *Bar Ass'n of Baltimore City*, 186 Md. 200 [46 A.2d 289, 291 [2]]; *In re Diesen*, 173 Minn. 297 [217 N.W. 356, 357]; *In re Burrus*, 364 Mo. 22 [258 S.W.2d 625, 626].)

█ Second: *Was the punishment recommended by the Board of Bar Governors excessive?*

*No.* In 1949 petitioner was suspended from the practice of law for three months for acts of deceit practiced upon a fellow attorney.

The record discloses a callous and brazen indifference to the obligations of an attorney, with the object of personal gain. Under these circumstances petitioner should be removed from the practice of law for a substantial period of time in order that he may realize the error of his ways and rehabilitate himself before again resuming a place in the ranks of the legal profession.

In *Townsend* v. *State Bar*, 32 Cal.2d 592 [197 P.2d 326], an attorney who had been previously disciplined for making false statements in a sworn declaration of candidacy for judicial office and earlier for "ambulance chasing" was suspended for three years for advising a client to conceal assets from creditors.

In *Alkow* v. *State Bar*, 38 Cal.2d 257 [239 P.2d 871], an attorney was suspended for three years for having made misrepresentations in connection with employment by a collection agency, failing to give financial accountings, and issuing bad checks.

In *Mayer* v. *State Bar*, 2 Cal.2d 71 [39 P.2d 206], an attorney who persisted in advertising for divorce business during a one-year suspension for such conduct was disbarred.

It is ordered that petitioner be suspended from the practice of law in this state for a period of three years, commencing 30 days after the date of the filing of this order.

Carter, J., did not participate herein.