**In the Matter of William A. MOON, Respondent.**

**No. 46140.**

Supreme Court of Missouri. En Banc.

March 10, 1958.

Frank W. Hayes, Sedalia, for informants.

Sam M. Wear, William A. Wear, Wear & Wear, Springfield, for respondent.

WESTHUES, Judge.

This is a disciplinary proceeding to determine what action should be taken against

respondent William A. Moon, a member of the Bar of Springfield, Missouri, who entered a plea of guilty in a Federal Court on a charge of failing to file Federal Income Tax Returns in 1954, 1955, and 1956, for taxes due for the years 1953, 1954, and 1955, respectively.

The plea of guilty was entered in the Federal Court on February 15, 1957. On February 26, 1957, respondent filed in this court a petition asking that he be permitted to appear voluntarily and to submit himself to the court's jurisdiction for the purpose of having the court determine what, if any, disciplinary action should be taken against him. This court, on February 27, 1957, denied that request and referred the petition to the Advisory Committee of the Missouri Bar for a full investigation and report. The Committee held a hearing on May 24, 1957, and filed the record of that hearing in this court whereupon leave was granted to the Committee to file an information.

The information, filed on July 23, 1957, in addition to alleging that respondent had entered a plea of guilty in the Federal Court of having failed to file income tax returns for taxes due for the years 1953, 1954, and 1955, charged that he failed to file such returns for taxes due for the years 1945 to 1955, inclusive. It was further alleged that in each of those years Moon's net income was such that in each year a substantial sum was due the Federal Government. It was further alleged that no State income tax returns were filed during those years.

The Advisory Committee filed its report in this court on July 26, 1957. It is a lengthy and complete report both as to the facts in the case and the law. In this report, the Committee recommended unanimously that respondent be disbarred from the practice of law in Missouri and his name be stricken from the roll of attorneys. Briefs were filed on behalf of the Bar Committee and of the respondent. The case was orally argued before the court en banc at the January Session, 1958.

**In** the first point briefed, respondent insists that a conviction for failing to file a Federal income tax return is not an offense involving moral turpitude within the meaning of Section 484.240, RSMo 1949, V.A.M.S., and 42 V.A.M.S. Supreme Court Rules, rule 4.47. This court en banc, in the case of In re Burrus, 364 Mo. 22, 258 S.W. 2d 625, after a hearing, ruled that the failure of Burrus to file Federal income tax returns did involve moral turpitude. Respondent's lengthy brief with authorities cited in support thereof has not convinced us that we were in error in the ruling made in the Burrus case. We shall refer to a few of the authorities cited. The first case cited is Kentucky State Bar Association v. McAfee, Ky., 301 S.W.2d 899, 900. The court there, in a short opinion, stated that "an intention to defraud the United States government is not an essential element in the offense" of failing to file an income tax return. The court cited the case of In re Hallinan, 43 Cal.2d 243, 272 P.2d 768, as its main authority. That case is also cited in respondent's brief. In the Hallinan case, as we understand the opinion, the court held that a conviction of a crime standing alone was sufficient ground to disbar an attorney "only when the crime itself necessarily involves moral turpitude." The court held that the minimum elements of the offense of filing a false income tax return did not include an intent to defraud the government. See 272 P.2d loc. cit. 772(10). The court refused to dismiss the petition and referred the case to the Board of Governors of the State Bar for a hearing. The court, 272 P.2d loc. cit. 771(2–6), made the following comments: "The fraudulent acquisition of another's property is but another form of theft in this state. Pen.Code, § 484. We see no moral distinction between defrauding an individual and defrauding the government, United States ex rel. Berlandi v. Reimer, supra, [2 Cir.], 113 F.2d 429, 430–431, and an attorney, whose standard of conduct should be one of complete honesty, McGregor v. State Bar, 24 Cal.2d 283, 288–289, 148 P.2d 865, who is convicted

of either offense is not worthy of the trust and confidence of his clients, the courts, or the public, and must be disbarred, since his conviction of such a crime would necessarily involve moral turpitude." That quotation was approved on final disposition of the Hallinan case. See In re Hallinan, 48 Cal.2d 52, 307 P.2d 1, loc. cit. 3.

In the Burrus case, supra, [364 Mo. 22, 258 S.W.2d 626] this court held a hearing at which all parties had an opportunity to be heard. It will be noted that in the course of the opinion, this court stated that the gross income of Burrus for 1949 was $13,404; that in 1950, it was $17,460.12; that he willfully and knowingly failed to make a return. It was also stated that Burrus "cooperated with the Federal agents in an effort to compute the *amount of his delinquencies and to discharge the same.*" (Emphasis supplied.) This court quoted the following from the case of Rheb v. Bar Association of Baltimore City, 186 Md. 200, 46 A.2d 289: " 'These admissions, coupled with his admitted failure to keep adequate records, justify a finding that he deliberately failed to make returns or keep records, for the purpose of cheating the Federal Government and the State of Maryland out of taxes justly due. We think it is immaterial whether the federal crime is to be classed as a misdemeanor or a felony, an act of omission or commission. Such conduct might properly be characterized as fraud or deceit, even if it did not involve moral turpitude.' " So, the holding in the Burrus case, as well as that in the Rheb case, to the effect that a conviction of failing to file an income tax return involved moral turpitude, was based on the theory that in each case there was present an intent to cheat and defraud the government. Our interpretation of the opinions in the Burrus and Rheb cases is that they do not conflict with the opinion by the California court in the Hallinan case. In fact, the California court, when the Hallinan case was finally disposed of, cited the Burrus case with approval. See In re Hallinan, 48 Cal.2d 52, 307 P.2d 1, loc. cit. 3. Hallinan was suspended for a period of three years.

The question remains whether the evidence as presented justifies a finding that respondent's failure to file Federal income tax returns involved moral turpitude. Or, stated otherwise, was there present the element of fraud and deceit? Our answer to that question is in the affirmative.

Respondent's net income for the years 1945 to 1955, inclusive, was for six of those years over $10,000 per year and for the remaining years over $7,800. It was agreed that he owed the Federal government $34,-659.41. Note respondent's reason for not filing a return:

"Q. Tell the Committee why it was you didn't file these returns.

"A. It is kind of a hard question to answer. In 1945 I guess I had had the first real good year of my practice, and I didn't get my return filed that year. I· didn't have the money to pay it with at the time, and I guess you could call it procrastination, I let that year slip by and it is a matter you don't talk to your friends or relatives or people about, I didn't even mention it to my wife, and the second year slipped by and the thing kept going by and I didn't know what to do with it. I was afraid to talk to anyone about it and decided I would go ahead and keep an accurate record of everything and keep my deposits in the bank, and when I would get in a good, big fee one of these days, go over and try to settle up with the Government."

On further questioning, respondent stated, "I guess I lived too high." That respondent lived "too high" and that this was the principal reason for not filing tax returns are very evident from the evidence given by respondent's father. Note his testimony:

"The Witness: He fishes a lot, he takes long chances in fishing. He

catches more fish than I do. And I think that he got behind and he probably was a little hard pressed the first two or three years he got behind, and he probably figured he would get a good fee and go over and clean it all up. Instead of that happening, it pyramided and got worse. That is the only explanation I can make.

"Q. (By Mr. Wear) Bill is not extravagant, but he has been very liberal with his children?

"A. Yes, he has spent lots of money. He went on long hunting trips, and cars—

"Q. Bought boats?

"A. Boats, and I think he was extravagant some.

"The Chairman: Do you think he has lived beyond his means, Mr. Moon?

"The Witness: Well, I think he always lived clear up to his means, you might put it that way. Now, I was inclined to be the other way. I am kind of tight, Sam can tell you that, and I guess that it is the Scotch in me, but we don't see things alike. Now, some people live loosely and carelessly and spend everything they make, and others try to save. He is kind of on the loose like."

The evidence justifies a finding that respondent made no honest effort to pay his tax. He stated that he hoped some day to get a good fee and in that way to have sufficient funds to pay his tax. Many a young lawyer has had day dreams of large fees that never became reality. However, we call attention to the fact that the *net income* of respondent for the year 1945, when he failed for the first time to file a return, was $7,854.89; that the following year it was $14,027.49. It would seem that if respondent had made any effort to live within his income, he could have paid his tax. The evidence does not show that respondent's necessities were any greater than those of the ordinary family. Even if that were true, it would be no defense. Egan v. State Bar of California, 10 Cal.2d 458, 75 P.2d 67; In re Steffensen, 94 Utah 436, 78 P.2d 531; Cane v. State Bar of California, 14 Cal.2d 597, 95 P.2d 934; In re Kennedy, 217 Minn. 600, 15 N.W.2d 26; 7 C.J.S. Attorney and Client § 25, p. 764.

■ A number of businessmen and members of the Bar testified that respondent's reputation as an honest and upright citizen and lawyer in the community prior to the present controversy was excellent. While that fact is not a defense, it may be taken into consideration in deciding what action shall be taken. In re Burrus, supra; In re McCallum, 391 Ill. 400, 64 N.E.2d 310.

Respondent, in his brief, says that his "derelictions were committed in his personal capacity as a tax paying citizen and not in his professional capacity as an attorney." In support of this, he cited the Burrus case, supra, and In re Williams, Mo. App., 113 S.W.2d 353. The opinion in the Williams case by the Kansas City Court of Appeals was quashed by this court in State ex rel. Clark v. Shain, 343 Mo. 542, 122 S.W.2d 882. The Court of Appeals' final opinion in the case is reported in 233 Mo. App. 1174, 128 S.W.2d 1098. The attorney in question was suspended for two years with the privilege of moving for reinstatement upon proof that he had made restitution and proof that he had reformed.

■ Dereliction of an attorney in his personal capacity which involves moral turpitude or any dereliction involving honesty and fair dealing may be made the basis of disciplinary proceedings. See 7 C.J. S. Attorney and Client § 24, p. 762, and the numerous cases there cited.

In cases of this nature, it is always a difficult problem to determine the extent to which an attorney should be disciplined. In 7 C.J.S. Attorney and Client § 38, p. 806 it is stated that "In arriving at the punishment to be imposed, precedents are of little aid, and each case must be largely governed

by its particular facts, and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession. Disbarment will be decreed only when the court is convinced of its necessity for the protection of the profession, the courts, and the public, and a removal from the bar should not be decreed where any punishment less severe, such as reprimand, temporary suspension, or fine, would accomplish the end desired."

Considering the extent of respondent's dereliction and also matters favorable to him, such as his previous good reputation as a lawyer and citizen, we deem that a suspension from the practice of law for a period of two years will be sufficient to meet the ends of justice. Therefore, it is ordered that respondent be suspended from the practice of law for a period of two years from the day of the final determination of this case.

All concur.