**In the Matter of John M. LANDON, Petitioner.**

**No. 46923.**

Supreme Court of Missouri,

En Banc.

Jan. 12, 1959.

Roy P. Swanson, Kansas City, for petitioner.

DALTON, Judge.

This is an original proceeding in this court to determine what disciplinary action should be taken against petitioner, John M. Landon, a member of the Bar of this State practicing law in Jackson County, Missouri, who on April 11, 1958 entered a plea of guilty in the District Court of the United States for the Western District of Missouri, Western Division, to an information in two counts filed against him charging willful attempts to evade the payment of federal income taxes by the filing of false and fraudulent income tax returns for 1951 and 1952 [Title 26 U.S.C.A. Int.Rev.Code 1939, as amended, Section 145(b)].

The proceeding was instituted in this court on April 15, 1958, when petitioner filed his verified petition alleging that he had entered a plea of guilty to the said charges and that judgment and sentence had been entered against him. Petitioner asked permission "to appear voluntarily before this court and make full and complete disclosure of all of the facts and circumstances touching upon his qualifications as a practicing lawyer," and further stated: " * * * your petitioner does here and now waive all process herein and voluntarily submits himself to the jurisdiction of this Court for the purpose of having this Court judicially determine what, if any, disciplinary action should be taken against him because of matters and things herein presented or which may be presented against him upon such appearance."

The petition was submitted to and considered by the court and an order entered denying petitioner's request for an immediate hearing in person before the court, but in compliance with petitioner's prayer that the court judicially determine what, if any, disciplinary action should be taken against him, the matter was referred to the Advisory Committee (See Supreme Court Rule 5.14 et seq., 42 V.A.M.S.) for investigation and report. Thereafter, after a full hearing and consideration, the Advisory Committee filed its report and a transcript of the evidence offered on behalf of petitioner, together with a finding that petitioner "by failing to maintain his moral character and honesty has rendered himself an unfit person to further engage in the practice of the law," and a recommendation that petitioner be disbarred and his name stricken from the roll of attorneys. The cause was, thereafter, orally argued and submitted in this court on petitioner's evidence.

The first count of the information filed in the United States District Court charged that on or about the 17th day of March,

1952, "John M. Landon, late of Kansas City, Missouri, who during the calendar year 1951 was married, did wilfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America for the calendar year 1951, by filing and causing to be filed with the Director of Internal Revenue for the Sixth Collection District of Missouri, at Kansas City, Missouri, a false and fraudulent joint income tax-return on behalf of himself and his said wife, wherein it was stated that their net income for said calendar year was the sum of $17,411.28 and that the amount of tax due and owing thereon was the sum of $3,515.38, whereas, as he then and there well knew, their joint net income for the said calendar year was the sum of $25,498.50, upon which said net income there was owing to the United States of America an income tax of $6,-366.42; in violation of Section 145(b) Title 26 United States Code."

The second count was based upon a joint income tax return filed on March 16, 1953, for the calendar year of 1952, "wherein it was stated that their net income for said calendar year was the sum of $18,911.09 and that the amount of tax due and owing thereon was the sum of $4,361.80, whereas * * * their joint net income for the said calendar year was the sum of $27,716.75, upon which said net income there was owing to the United States of America an income tax of $7,936.04 * * *."

When petitioner appeared in the United States District Court to be sentenced, after a plea of guilty and a pre-sentence investigation, neither he nor his attorney attempted to challenge the statement of the Assistant District Attorney to the effect that the pre-sentence investigation demonstrated that petitioner "was advised competently as to the proper amount of income to report on these things, and that a proper amount did appear on his original draft of his return, and that that must have been deliberately reduced on his final draft, the one he filed. Also that throughout his de-ductions, that although he had in his hands at the time and it often appeared on his first draft, proper deduction would have been allowable, but that in instances they were raised in even amounts of $100 or $200, which could hardly have been a mistake or carelessness, I submit."

Petitioner was sentenced to six months in custody of the Attorney General of the United States on each count of the indictment. The sentences were suspended and the petitioner placed on probation for a period of two years. A fine of $1,000 on each count was assessed and the fines ordered to be paid, as well as petitioner's tax liability to the Government discharged. A deposit of $10,000 had been made to take care of the tax liability.

The offenses to which petitioner pleaded guilty were felonies and the maximum penalty provided is a fine of not more than $10,000, or imprisonment of not more than five years, or both, together with the costs of prosecution. Title 26 U.S.C.A. Int.Rev. Code 1939, as amended, Section 145(b).

The evidence taken before the Advisory Committee shows that Ruth E. Landon, petitioner's wife, is a partner in a partnership doing business under the name of Production Promotion and Development Company of Clifton, New Jersey. For a period of years prior and subsequent to the years 1951 and 1952 the partnership did not distribute all of its earnings, but nonetheless the earnings were taxable to Ruth E. Landon, which fact was well known to petitioner, and prior to 1951 and 1952 the partnership income was correctly and accurately stated on the joint returns of petitioner and Ruth E. Landon. For the year 1951 the income of Ruth E. Landon from the partnership was $15,133.75. The amount returned on the joint return by petitioner was $10,420. For the year 1952 the partnership income of Ruth E. Landon was $14,989.09 and the amount returned was $8,458.16.

In the hearing before the Advisory Committee, petitioner testified that the penciled

figures of amounts erased upon the income tax returns were not correct, but he admitted that the amounts which the government agents claimed to have been left out were within the figures he had originally put down and that he had then erased them to put in other figures. The record further shows:

"Q. Did you go through and mark up your deductions by even amounts as Mr. Flynn stated? A. I didn't think that I deliberately did it, no.

"Q. I say, did you do it, whether it was deliberate or not? A. I might have done it, yes.

"Q. Did your pencil draft of your original return properly reflect the total amount of your income? A. I had figures down there that were erased."

He later said that he did not deliberately withhold anything, that he was confused as to the amount, that as far as he was concerned it was a mistake, since he was always able to pay the tax.

As an excuse for his conduct petitioner testified that he was dilatory, always waiting to the last minute to get the returns ready, and in a hurry he threw something together and filed it, usually the last day of the period. He did not keep adequate and complete records of all of the income and various deductions which he claimed. He claimed that some of his difficulties were due to "not being able to get the exact information * * * The only records I had was the checkbooks. * * * As I said, I had no records."

When cross-examined about the "pencil copies" of income tax returns and erasures, petitioner testified: "* * * as I said, as far as the partnership income was concerned we did not receive all of that money and I was in doubt as to whether we received it or whether we should report it, so it was not money that we had received. It didn't reflect in our bank account. Q. I understand, but it was money that was attributable to you because of the partnership earnings of which your wife was a member, right? A. Yes, sir. Q. You had so recognized it and so treated it in the years immediately before and immediately following the years in question, is that correct? A. Yes." Petitioner further said: "There was a question in my mind whether it should be included in the return, therefore, I resolved it in my favor."

From cross-examination of petitioner by members of the Advisory Committee it appeared that petitioner made no voluntary disclosure of his failure to report the mentioned income and that he filed no amended returns. He claimed he had no definite information concerning his wife's income from the partnership in 1951 and 1952, until a federal agent walked in in 1955. Prior to that time he had made no real effort to get correct information or amend his returns. As to the income from the partnership, petitioner testified he depended upon conflicting oral information received by telephone from different members of his wife's family and that he "was just confused on it was all" and didn't know the actual earnings of the partnership.

When asked why a plea of guilty had been entered to the charges against him, he testified: "It was my honest opinion that rather than go through an extended trial involving all of these various matters and having been * * * on the hot seat for three years, I wanted to get it over with. I was willing to do that to get it over with, accept whatever consequences and try to forget about it. * * * Q. As I understand your testimony now is that this was all the result of confusion and mistake and lack of records and you simply plead guilty to an intentional withholding for the purpose of getting it over with? A. That was my feeling in the matter. * * * Q. And yet you say that in your own mind you knew you were not guilty, that you pleaded guilty to get it over with, is that a correct statement? A. As far

as going through the grand jury and havin an indictment and a trial of it, I felt that it would probably end up the same way by my pleading guilty, but, as I said, I wanted to get the thing over with. * * * I knew perfectly well what the consequences would be but I felt that was the only thing to do."

From the testimony heard and documents offered and examined, the Advisory Committee reached the conclusion that petitioner knew what the correct partnership income was for the mentioned years and that he deliberately failed to state the proper amounts in the income tax returns with the intent to understate his income. We think the record made by petitioner before the Advisory Committee clearly shows that he willfully, knowingly and intentionally misstated his wife's income for the mentioned years for the purpose of evading the payment of income taxes. The conclusion seems inescapable that he was in fact guilty of the charges made against him and to which charges he entered a plea of guilty.

There is no contention here that the offenses to which petitioner entered pleas of guilty do not involve moral turpitude. That seems to be conceded, since counsel for petitioner only cites In re Burrus, 364 Mo. 22, 258 S.W.2d 625 and an annotation in 59 A.L.R.2d 1359, both on the proposition that suspension of petitioner's license for a limited time should be deemed adequate.

We think it immaterial to any issue here whether the federal crimes connected with income tax evasion are to be classified as misdemeanors or felonies, acts of omission or acts of commission, the failure to file income tax returns or the filing of false returns, as here, since petitioner's action was fraudulent, and his intent was to deceive and defraud and avoid the payment of taxes. Further, the criminal penalties applied in such cases in the federal courts, as indicated, are not materially different, whether the offense is classified as a misdemeanor or a felony.

Since no contested issue of law is presented for decision, but only the extent of disciplinary action required, further facts must be stated. Petitioner was born in 1908 in Kansas City, the son of Thad B. Landon, an attorney, who was later a Judge of the Circuit Court of Jackson County. Petitioner graduated from Wentworth Military Academy and later from the Law School of the University of Missouri. He was admitted to the Bar by this court in 1932 and he engaged in the active private practice of law in Kansas City until 1947, when he accepted a position as an attorney for the Real Estate Loan Department with the Commerce Trust Company. At the time the criminal charges in question were filed against him, he was employed by the Commerce Trust Company as assistant general counsel and as assistant vice-president, both of which positions he promptly resigned. He was also "an accredited appraiser with the Real Estate Appraisers" in which work he is now engaged. It is not his intention to practice law pending this court's ruling of his application to determine disciplinary action in his case, but he desires to resume the private practice of law.

Petitioner is married, as stated, has a wife and three daughters, two of whom were married and the third is a student in the University of Kansas. He has long been active in Church, Sunday School work and Y. M. C. A. work, as well as Bar Association work. He belongs to no clubs, does not use intoxicating liquor to excess and does not indulge in expensive vacations or in gambling.

The record also contains the testimony of a prominent pastor, a number of outstanding lawyers, several highly respected circuit judges and some prominent business men who have known petitioner for many years. Their testimony tends to show that petitioner was an excellent law-

yer and, prior to the disclosure of the facts upon which the criminal charges were based, petitioner bore a fine reputation for truth, veracity, morality and professional ability and integrity. Some of the witnesses believed that, on the basis of petitioner's prior record of honesty, integrity and good character, he would still be, and was, highly respected and regarded by people generally in the community in which he lived.

"Dereliction of an attorney in his personal capacity which involves moral turpitude or any dereliction involving honesty and fair dealing may be made the basis of disciplinary proceedings." In re Moon, Mo.Sup., 310 S.W.2d 935, 939.

■ The fact that petitioner's "derelictions were committed in his personal capacity as a tax-subject citizen rather than in his professional capacity has some bearing upon the ultimate issue of his fitness to continue in the practice." Also we may consider the fact that petitioner has promptly submitted himself to this court for disciplinary action. In re Burrus, 258 S.W.2d 625, 627, supra.

The purpose of disciplinary action in this case is not to punish petitioner, but to preserve the courts from the ministration of persons unfit to serve therein as attorneys. In re Burrus, 258 S.W.2d 625, 627, supra.

■ The fact that petitioner has long borne a good reputation for honesty, morality and professional integrity is no defense in this proceeding, but we may consider it as determining what action should be taken under the facts and circumstances shown. In re Moon, 310 S.W.2d 935, 938, supra. We have previously noted that the extent of the punishment imposed by the federal court for the offenses mentioned was a suspended sentence of six months and a $1,000 fine on each count and a requirement that the evaded tax be paid.

In dealing with petitioner as a member of the Bar in this action, we are not dealing with a criminal prosecution. In the Moon case, supra, we quoted with approval, the rule stated in 7 C.J.S. Attorney and Client § 38, p. 806, as follows: "In arriving at the punishment to be imposed, precedents are of little aid, and each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession. Disbarment will be decreed only when the court is convinced of its necessity for the protection of the profession, the courts, and the public, and a removal from the bar should not be decreed where any punishment less severe, such as reprimand, temporary suspension, or fine, would accomplish the end desired."

The recommendation of the Advisory Committee (in addition to the matters heretofore mentioned) appears to be in part based upon the finding that petitioner had "lost his civil rights as a citizen of this state and of the United States" and upon petitioner's refusal to admit his guilt, even after his plea of guilty had been entered in the federal court, and, also, upon the fact shown by the record, that petitioner was "an evasive witness." While their recommendation has been considered, the final decision must be this court's responsibility.

■ From a careful review and consideration of the whole record and of the facts favorable and unfavorable, we think the ends of justice will be best served by a suspension of petitioner from the practice of law for a period of three years from the date of the filing of his petition herein on April 15, 1958.

It is accordingly so ordered and adjudged.

All concur except EAGER, J., not sitting.