In the Matter of Earl H. C. LURKINS, Respondent.

No. 49599.

Supreme Court of Missouri.

En Banc.

Jan. 13, 1964.

. Walter M. Clark, St. Louis, special counsel for informants.

Earl H. C. Lurkins pro se.

STORCKMAN, Judge.

This is a disciplinary proceeding filed in this court by the Twenty-Second Judicial Circuit Bar Committee, as informants, against Earl H. C. Lurkins, a duly licensed attorney at law, who maintains an office in the City of St. Louis, and who will sometimes be referred to as the respondent. The respondent filed an answer and the Honorable John Hall Dalton was appointed as special commissioner to take evidence on the issues joined and to report the evidence taken together with his findings of fact and conclusions of law. The commissioner filed his report and recommended that the respondent be suspended from the practice of law for a period of five years. Thereafter the matter was briefed and argued orally by the parties. The respondent has appeared pro se throughout the proceedings in spite of repeated recommendations by the informants and the commissioner that he employ counsel to advise and represent him.

On July 27, 1961, the respondent was convicted by a jury in the United States District Court for the Eastern District of Missouri, Eastern Division, of willfully and knowingly failing to make an income tax return to the District Director of Internal Revenue or any other proper officer of the United States for the calendar years 1954 and 1955 in violation of Title 26, U.S. Code, § 7203. Thereafter, on October 24, 1961, he was fined $10,000 on each of the two counts. The respondent was represented by counsel at all stages of the trial

in federal court. He did not appeal his conviction and, within the time allowed by the court, paid the total fines of $20,000.

The respondent was admitted to the Bar in 1923. For a number of years he practiced with various lawyers and thereafter opened and maintained his own law office. His practice consisted largely of probate, corporate, and office matters. He also engaged in business activities among which was a partnership in a bowling alley which was not profitable according to the respondent's testimony. About 1942 he began investing in the common stock of corporations and this venture was quite successful. He invested in "peace stocks" during World War II and his investments increased substantially after the war was ended. He continued to invest successfully thereafter and advised others with respect to investments. In 1949 the respondent suffered a stroke which for a time affected his physical and mental condition.

The respondent concedes that he did not file income tax returns for the years 1946 on through 1955. He testified that he paid something on account of taxes each year; however, during his income tax trial, as a condition imposed on him by the trial judge, he paid all of his delinquent income taxes. For the years covered by the criminal information, he paid as additional taxes $4,000 for 1954 and $17,978.80 for 1955.

■ At the hearing before the commissioner, the respondent contended that his offense did not involve moral turpitude and presented somewhat the same issue in his oral argument and brief in this court. He cites five cases from other jurisdictions on this question. They are: In re Hallinan, 43 Cal.2d 243, 272 P.2d 768, Baker v. Miller, 236 Ind. 20, 138 N.E.2d 145, 59 A.L.R.2d 1393, People ex rel. Dunbar v. Fischer, 132 Colo. 131, 287 P.2d 973, United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, and In re Disbarment of Rothrock, 16 Cal.2d 449, 106 P.2d 907, 131 A.L.R. 226. Not all of these cases support the claim which the respondent makes.

But regardless of what other jurisdictions may hold, it is now well settled in this state that willfully and knowingly failing to make a federal income tax return is an offense involving moral turpitude within the purview of state statutes and the rules of this court authorizing suspension of an attorney from the practice upon conviction of a criminal offense involving moral turpitude. 26 U.S.C.A. § 7203; S.Ct. Rule 4.47, V.A.M.R.; § 484.240, RSMo 1959, V.A.M.S.; In re Burrus, 364 Mo. 22, 258 S.W.2d 625, 627 [1]; In re Moon, Mo., 310 S.W.2d 935, 938 [3]. There is nothing in the cases of Neibling v. Terry, 352 Mo. 396, 177 S.W.2d 502, 152 A.L.R. 249, In re McNeese, 346 Mo. 425, 142 S.W.2d 33, or State ex rel. Shackelford v. McElhinney, 241 Mo. 592, 145 S.W. 1139, cited by the respondent which is persuasive of a contrary ruling.

■ The respondent also cites Louisiana State Bar Ass'n v. Connolly, 206 La. 883, 20 So.2d 168, on the proposition that, where a disbarment proceeding was based on a certified copy of a federal court judgment convicting an attorney of income tax evasion, the judgment of conviction was not conclusive and the attorney was entitled to introduce evidence of circumstances surrounding the conviction. Regardless of what the rule may be elsewhere, this court will not permit the respondent in a disciplinary action such as this to re-try a final judgment of conviction rendered against him in a criminal prosecution. In re McLendon, Mo., 337 S.W.2d 56, 61 [3]. Although it is not a defense, evidence as to the conduct of the respondent-attorney and other matters in mitigation or aggravation may be taken into consideration in determining the nature and extent of disciplinary action. In re Landon, Mo., 319 S.W.2d 553, 558 [2]; In re Moon, Mo., 310 S.W.2d 935, 938 [2].

The respondent testified and offered three other witnesses in his behalf. The commissioner and counsel for the informants were quite tolerant and indulgent,

and properly so, in permitting the respondent to testify to matters that had no possible relevancy to the issues on trial and in permitting the other witnesses to testify in like fashion. This court has likewise considered the entire transcript and all exhibits. Much of the respondent's evidence is contradictory and all together it is insufficient to mitigate the criminal acts of which he was convicted. In general he undertakes to excuse his derelictions by claiming that he was sick and did not have accurate records of his business ventures and, therefore, could not figure his taxes correctly. Admittedly, he failed to file returns for three years before he had his stroke, and it further appears that he handled an estate in probate court including the making of settlement in 1954 and performed other acts which tend to discount his alleged inability to make the minimum disclosures to the Internal Revenue Department which would have prevented his prosecution and conviction of unlawfully and willfully failing to file returns. He claims to have talked to several persons including Collectors of Internal Revenue during this time and asserts that he was encouraged to believe that he should not make returns as long as he did not have accurate figures. One of the persons was available as a witness and denied any such discussion. It is incredible that any of the persons would have given him such advice or that a person of his demonstrated legal and business acumen would rely upon such advice from anyone.

The respondent talked to the Honorable Fred J. Hoffmeister, Chairman of the Informant Bar Committee, and thereafter wrote to the Honorable Morton D. Fisher, a Judge of the Tax Court of the United States, stating in effect that the Missouri Bar, after hearing the respondent's side, had decided to do nothing and that the Tax Court should do likewise. Judge Hoffmeister testified that he did not tell the respondent that the Committee would not take action against him but, on the contrary, had instructed counsel to institute this proceeding following the respondent's conviction. In short, it appears from the record that the respondent blames everyone but himself for his misfortunes. He criticizes the federal judge who presided at his trial, his own attorney, and others with whom he has dealt. The respondent testified that the federal judge who presided at his criminal trial had him examined as to his mental condition for about a week in connection with his trial and that the court decided that he was mentally capable. One of the respondent's witnesses testified that he had always found the respondent honest and reputable but the respondent was possessed of a "contemptuous attitude in any matter that lent itself to disagreement."

The respondent was entitled to defend himself vigorously in this action and in any proper manner, but the evidence shows a tendency on the respondent's part to vilify others and blame them for the misfortunes that he alone is responsible for. His persistent refusal to recognize any responsibility for his patently wrongful acts indicates a lack of appreciation of the standards of rectitude and ethical conduct prescribed for members of the Bar. By his words and actions he has tended to aggravate rather than to mitigate the charge of professional misconduct. We sympathize with him because of the stroke suffered in 1949, but that fact cannot excuse the wrongful and unlawful acts which began before and continued after his illness.

It is ordered that the respondent Earl H. C. Lurkins be suspended indefinitely from the practice of law with leave to apply for reinstatement after an expiration of a period of five years from the date of the rendition of this opinion upon a showing that he is a person of good moral character and fully qualified to be licensed as a member of the Bar of Missouri.

All concur.