**In re Richard K. HOUTCHENS, Respondent.**

**No. 59454.**

Supreme Court of Missouri, en banc.

Sept. 12, 1977.

Harlan D. Burkhead, Kansas City, for informant.

Ernest H. Fremont, Jr., Kansas City, for respondent.

**PER CURIAM:**

"The Advisory Committee", created by Rule 5,[1] did on March 2, 1976, charge respondent, Richard K. Houtchens, with conduct violative of various Disciplinary

1. References to rules are to Missouri Supreme Court Rules and V.A.M.S.

Rules[2] of the Code of Professional Responsibility, Rule 4.

On April 20, 1976, the Honorable Noah Weinstein was appointed Master to take testimony and report findings of fact and conclusions of law. The same have been filed, arguments made and the cause submitted.

Respondent does not challenge the factual findings of the Master; and, for that reason, it is sufficient that we only detail a summarized version thereof.

COUNT I: That respondent in May of 1973, and thereafter, represented several wholesalers of shoes in their efforts to collect funds due from a retailer of shoes in Clinton, Missouri; that respondent was authorized to settle said claims on a 50% basis; that the retailer through its attorney made said payments in consideration of receipt of releases from the wholesalers; that respondent failed to remit such funds to his clients, deposited the same in his bank account and "advised said clients that payment of said settlement proceeds had not been made; that respondent did not remit said funds to his clients until in or about October, 1974, after having been contacted by another attorney for his clients retained for the purpose of obtaining said funds . . ." Restitution was made after respondent had ". . . commingled his said clients' funds with his own funds . . . and used said funds for his own personal and professional use."

COUNT II: That respondent in the years 1974 and 1975 represented a man and his wife in a claim for damages arising out of an automobile collision; that settlement was made with the insurance carrier for others involved in the amount of $4,000; that respondent in return for a draft payable to him and his clients delivered on February 21, 1975, a release, purportedly executed by his clients, to the insurance carrier; that the clients had not signed or executed the release nor endorsed the draft

2. Dr 1–102(4), DR 1–102(5), DR 1–102(6) and DR 9–102 in Counts I and II; DR 2–106(A) and DR 2–106(B) in Count III; and, DR 102(4), (5) and (6) and DR 9–102 in Count IV.

which respondent deposited to his personal account; that until June 16, 1975, respondent failed to remit to his clients any of the settlement proceeds and to that date denied that there had been a settlement. Restitution was made after the start of this proceeding.

COUNT III: The Master found that the evidence did not support the allegation respondent had entered into an unreasonably excessive contingent fee contract with his clients mentioned in Count II.

COUNT IV: That respondent in the years 1973 and 1974 represented two married couples in their claims for damages arising out of an automobile collision on November 23, 1973; that respondent on or about May 17, 1974, settled said claims for $3,000 and $500, respectively, delivered releases to the other party's insurance carrier and deposited the drafts in his professional account; that, again, the clients had not signed or executed the releases or endorsed the drafts. Restitution was made on October 24, 1975, just prior to respondent's third appearance before the Advisory Committee.

■ Misconduct, such as that with which respondent is charged, is totally incompatible with the ethical standards of the legal profession; and, absent some very persuasive and acceptable mitigating factor, disbarment is the proper answer.

Respondent, after admitting that he acted as charged, denies that he has knowingly or intentionally "done any wrongdoing." It is submitted that he suffered from a mental and physical illness which clouded his judgment, impaired his memory and "made it impossible [for him] to conduct his business and professional affairs in a clear, logical fashion." Medical evidence of record suggests the presence of psychotemporal epilepsy reflected in periodic states of amnesia, confusion and disorientation. Difficulty in handling "stress" is shown by respondent's chronic tension and excessive worry, as well as his tendency to pout, become sullen and procrastinate when a difficult task is encountered. During the period in question, excessive use of alcohol not only aggravated the problem but seemed to trigger more

frequent periods of irrational conduct. Abstinence helps but unfortunately does not eliminate the problem. Nothing would be gained by a recitation of the many traumatic personal experiences suffered by respondent.

Informants suggest that respondent is suffering from a "selective" form of amnesia and that his credibility is suspect; but they do not seek to establish an absence of the extremely severe mental and physical problems reflected in the record. It is contended, nevertheless, that the "defense" offered addresses itself to an improper inquiry of whether or not respondent should be punished and ignores the principal concern of protection of the public and advancement of the integrity and prestige of the Bar.

It was concluded by the Master that suspension "for a period of one year with leave to apply for reinstatement thereafter upon a showing that he has recovered from his illness so that he can practice law in compliance with Rule 4" was adequate and he so recommended. His conclusion was based, in part, on the fact respondent "quit drinking" and is "doing well now" in addition to his acceptance of a long range program of psychiatric care for a projected period of five years.

■ Resolution of the problem must start from the oft-quoted statement of this court found in *In Re Randolph*, 347 S.W.2d 91 (Mo. banc), l.c. 109, that: "The main purpose of a proceeding of this nature is to make an inquiry into the fitness of an attorney to continue in the practice of law. Its main objective is not to punish the attorney but the protection of the public and the maintenance of the integrity of the profession and of the courts."

■ Whether or not the "main objective," just noted, can be accomplished in this case short of disbarment has been and is a question of grave concern to us. The practice of law, generally, involves situations wherein "stress" is present and it is imperative that a lawyer have the capacity to deal with the same. The possibility re-

spondent will never be able to do so on a regular basis should be of immediate concern to him and those interested in his welfare.

The chance respondent can recover from his health related problems is a factor which we are free to consider. *In Re Lurkins,* 374 S.W.2d 67 (Mo. banc 1964); *In Re O'Brien,* 478 S.W.2d 310 (Mo. banc 1972). However, until such time as he has recovered, protection of the public as well as the profession is paramount. Suspension of respondent from the practice of law will accomplish the latter and not proscribe the former. The period of suspension actually is not too important, because removal of the same can only follow a hearing which shows a full capacity to practice law. We select three years for suspension that false hopes will not be created nor recovery efforts be further frustrated.

Wherefore, it is ordered that Richard K. Houtchens be suspended indefinitely from the practice of law with leave to apply for reinstatement after expiration of a period of three years from the date of the rendition of this opinion upon a showing that he is a person of good moral character and fully qualified to be licensed as a member of the Bar of Missouri.

All concur.