In the Matter of Anthony **CANZONERI**.

No. 47645.

Supreme Court of Missouri,

En Banc.

March 14, 1960.

Rehearing Denied April 11, 1960.

Don O. Russell, Attorney at Law, St. Louis, for Anthony Canzoneri.

Arthur H. Slonim, Clayton, for Advisory Committee.

HYDE, Judge.

This is a disciplinary proceeding following the conviction of Anthony Canzoneri (hereinafter called petitioner) "of willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by him and his wife to the United States of America, by filing and causing to be filed a false and fraudulent joint income tax return for each of the calendar years 1952, 1953, 1954 and 1955"; entered on a plea of nolo contendere. Petitioner was sentenced to one year on each of four counts, sentences to run concurrently, fined $7,500 on each count, a total of $30,000, which he promptly paid, and was placed on 18 months' probation. Thereafter, petitioner filed a petition asking permission to appear voluntarily and submit himself to the jurisdiction of this court for disciplinary action. This petition was referred by us to our Advisory Committee (see Supreme Court Rule 5, particularly, 5.14, 5.17, 5.18 and 5.19, 42 V.A.M.S.) for such action or recommendation as it might deem proper.

The Advisory Committee held a hearing, at which petitioner appeared with counsel, and filed a report finding that petitioner "did wilfully and knowingly attempt to evade and defeat the payment of income taxes owed by him, and that he wilfully and intentionally failed to report

taxable income." The Committee recommended that petitioner be disbarred; and then, in the alternative, recommended "that should this Court deem a suspension, rather than disbarment, adequate to protect the public interest, that any such suspension should be of indefinite duration with leave granted petitioner to apply for reinstatement after the expiration of a substantial period to be fixed by the Court upon a showing by petitioner that he is then a person of good moral character, and fully qualified to be licensed as a member of the Bar of Missouri." Petitioner has filed exceptions to this report and recommendations of the Committee.

The position taken in these exceptions and in petitioner's brief is that he should be completely exonerated because "there is no evidence of any professional misconduct on the part of the Respondent in respect to any legal matters handled by him for clients" and "there was no showing of any intentional wrongdoing by the Respondent in his professional capacity." This is fallacious because it does not fully consider the true nature of the duties and obligations of lawyers.

The standard of conduct for lawyers, stated in Supreme Court Rule 4.47, is as follows: "A lawyer should always maintain his integrity; and shall not willfully commit any act against the interest of the public; nor shall he violate his duty to the courts or to his clients; nor shall he, by any misconduct, commit any offense against the laws of Missouri or the United States of America, which amounts to a crime involving acts done by him contrary to justice, honesty, modesty or good morals; nor shall he be guilty of any other misconduct whereby, for the protection of the public and those charged with the administration of justice, he should no longer be entrusted with the duties and responsibilities belonging to the office of an attorney."

Petitioner was born in Italy in 1891, came to this country in 1900, and became a naturalized citizen in 1916. He attended schools in Italy and St. Louis and had two years in high school in St. Louis. At age 14 he went to work as a clerk for a shoe company; at 16 he became a barber; and in 1916 began working as a law clerk, attending Benton Law School at night, being admitted to the Bar in 1919. He was an interpreter for the Draft Board during World War I. In his early practice, during the Prohibition period, he handled many liquor violation cases, mostly for Italians, and acquired a considerable estate. He served as Police Judge by appointment of the Mayor of St. Louis and several times served as a Provisional Judge of the St. Louis Court of Criminal Correction. Later he served for 12 years as a member of the Board of Children's Guardians by appointments from three successive mayors. Several lawyers testified to petitioner's good reputation, personal honesty and proper professional relations with clients and other lawyers. Petitioner's net worth was stated by his counsel, at the time of his conviction, to be $275,000. The charges made in the information filed against petitioner showed the following allegations concerning income and tax deficiencies:

| Year | Income Reported | Income in Fact | Tax Reported | Tax in Fact |
|------|----------------|----------------|--------------|-------------|
| 1952 | $ 3,146.35 | $13,079.39 | $ 298.46 | $2,823.02 |
| 1953 | 3,977.96 | 12,377.34 | 483.50 | 2,619.42 |
| 1954 | 971.69 | 9,519.39 | 154.58 | 2,035.28 |
| 1955 | 5,039.45 | 7,547.37 | 1,028.67 | 1,476.92 |
| Totals | $13,135.45 | $42,523.49 | $1,965.21 | $8,954.64 |

The two principal sources of income omitted from these returns were interest on United States bonds and interest on loans secured by trust deeds. Petitioner's brief furnished to the Advisory Committee, after the hearing, stated the deficiency in taxes, due to omission of these interest items, was as follows: 1952—$950.92; 1953—$1,090.-44; 1954—$1,675.52; 1955—$400.17. (The portion of this deficiency in taxes due to unreported bond interest varied from $254.-43 in 1954 to $338.98 in 1952.) The amount of the trust deed interest used in this calculation was based on the examination, by petitioner's accountant, of the books of the real estate dealer, Gilpin, from whom petitioner purchased these trust deed notes. According to a letter in the record, written by petitioner's attorney, between December 31, 1951, and December 31, 1953, according to Gilpin's records, petitioner was charged with having 33 deeds of trust amounting to about $116,950. Petitioner said he invested approximately $80,000 in trust deeds and annually was receiving from $4,000 to $4,500 interest from them. (For some of Gilpin's transactions see State v. Gilpin, Mo.Sup., 320 S.W.2d 498; State v. Gilpin, Mo.Sup., 320 S.W.2d 504.) Petitioner said he did not include any interest from United States bonds because he thought it was nontaxable. He had owned bonds when the interest was not taxable and claimed he did not know this had been changed.

As to the trust deed interest, petitioner admitted he had not included all of it but claimed he had included some in the amount he showed as profit from his profession. He said he had possession of these deeds, in his office, and made notations on them of the interest items; and would go through them at the end of the year and figure the interest drawn on them during the year but nevertheless did not explain why he did not include all of it, except to say he was negligent. He also admitted he had failed to include some small fees ($25 to $50) collected in cash which he forgot to put down in the day book he kept. Petitioner said he always destroyed his records after two years and he produced no records for the Committee. Petitioner claimed the government estimates were incorrect but said he did not know and could not find out what the correct amount of his income was for any year. The returns (1952, 1953, 1954) furnished the Advisory Committee did show dividends separately listed by name of each company and also interest from savings and loan companies. None of the trust deeds showed that petitioner was the owner of the notes (names of straw parties being used) and collections were made by Gilpin. Sometimes Gilpin would use the amounts due petitioner to make new or larger loans for him instead of remitting the money to him. Another item of income omitted from petitioner's returns was rent received from part of the duplex in which petitioner and his wife lived. His explanation of this was that the title was in the name of himself, his wife and his sister (whom he claimed as a dependent); and he also said that all omissions were due to negligence and not fraudulent intent. Petitioner also stated in his exceptions that "any income tax deficiency was the result of mistake, ignorance and negligence." Petitioner seems to take the position that the government should have informed him that he was not properly preparing his returns. When investigation started, petitioner gave all the cancelled checks he had to the government agents; and also turned over his files to them, from which they interviewed his clients in determining his professional income.

We cannot follow the reasoning of petitioner's brief in this court, stating: "The question of whether or not Anthony Canzoneri understated his income is not a matter properly to be considered in this proceeding, and the question of wilfullness in understating his income is likewise not here involved." Apparently this statement is based on the erroneous view these matters cannot be considered because "there is no evidence of any misconduct in his professional capacity." It is also argued

that these matters are not to be considered because petitioner's plea to the federal charges was nolo contendere and because "the determination of both the deficiency and the wilfulness is pending before the tax court." The first of these contentions is disposed of by Rule 4.47, hereinabove set out, because what we must determine is whether petitioner has been guilty of such misconduct as to require a decision that "he should no longer be entrusted with the duties and responsibilities belonging to the office of an attorney." This is true because "the purpose of suspending or disbarring an attorney is to remove from the profession a person whose misconduct has proved him unfit to be intrusted with the duties and responsibilities belonging to the office of an attorney, and thus to protect the public and those charged with the administration of justice, rather than to punish the attorney." 5 Am.Jur. 411, Sec. 249, and cases cited; In re Conner, 357 Mo. 270, 207 S.W.2d 492; In re Richards, 333 Mo. 907, 63 S.W.2d 672. The primary duty of every lawyer is to keep his own conduct above reproach (certainly above the minimum standards of the criminal law) because improper conduct of even a few persons lowers the prestige of the profession and its effectiveness in performing its duties and responsibilities. Thus the honesty of petitioner in the performance of his obligations to the United States Government, in compliance with its laws, is a most important issue and the question of wilfulness in understating his income naturally must be considered. That is why the cases have so generally held that moral turpitude is involved in such an offense. (See In re Moon, Mo.Sup., 310 S.W.2d 935, 936; In re Burrus, 364 Mo. 22, 258 S.W.2d 625, 626; also In re Landon, Mo.Sup., 319 S.W. 2d 553, 557.) As to the matter of the plea, we settled that in Neibling v. Terry, 352 Mo. 396, 177 S.W.2d 502, 505, 152 A.L.R. 249, holding that "conviction on his plea of nolo contendere is sufficient to authorize his disbarment under our statute and rule." See Sec. 484.190 RSMo, V.A.M.

S. and Rule 5; see also Wilson v. Burke, 356 Mo. 613, 202 S.W.2d 876. Finally, we point out that the issues before the Tax Court concern petitioner's liability for taxes and penalties while we are concerned with his fitness to continue as a member of our Bar, which is an entirely different matter.

We regretfully must reach the conclusion that petitioner's own testimony shows that he did not honestly report his income in his tax returns, knowing at the time that he did not do so. Not only did he leave out most, if not all, of his trust deed interest (his returns do not show any of it was included) but he never kept records from which he himself could know the correct amount of his income for any year and he followed the practice of destroying many of the incomplete records he did have. The trust deed interest was one income item of which he did have a complete record, yet he did not make any reasonable explanation to the Committee as to why he did not list any interest from the trust deeds. He admitted he did know there was a place on the returns for listing interest and did list some other items of interest there. Furthermore, although he told the Committee that he reported trust deed interest and professional earnings in one lump sum, copies of his 1952, 1953 and 1954 returns before the Committee show that the largest sum reported as such earnings was $4,004.75 in 1952 (he got $1,600 from one fee that year), yet he testified that he was receiving from $4,000 to $4,500 from trust deed interest. He also admitted that he knew he had failed to make a record of and report some fees paid in cash and never reported any duplex rent. Perhaps his failure to report his government bond interest may have been due to ignorance (although that taxes credulity) but, under all the circumstances, we cannot reasonably accept mistake and negligence as the only reasons for failure to include all of these other items for so many years. Moreover, we cannot find that petitioner made a full, fair and frank

disclosure of all these matters in his testimony before the Committee.

■ However, because of petitioner's previous good record and standing and the evidence showing his proper conduct in the practice of law throughout his career as a lawyer, we believe that a suspension, rather than disbarment, would be adequate to protect the public interest. Accordingly it is ordered that Anthony Canzoneri be suspended and prohibited from engaging in the practice of law in Missouri until further order of this Court and that he may be permitted to apply for reinstatement after the expiration of three years from the date of the adoption of this opinion upon a showing that he is then a person of good moral character and fully qualified to be licensed as a member of the Bar of Missouri.

All concur.