**In the Matter of Martha McLENDON, Petitioner.**

**No. 47589.**

Supreme Court of Missouri,

En Banc.

July 11, 1960.

Jack N. Bohm, Kansas City, for petitioner.

Michael J. Bogutski, Kansas City, for Advisory Committee.

DALTON, Judge.

This is an original proceeding in this Court to determine what disciplinary action should be taken against the petitioner, a member of the Bar regularly licensed to practice law in this state.

By her petition presented on May 7, 1959, petitioner alleged that she had been charged and convicted of a felony in the District Court of the United States for the Western District of Missouri, Western Division, to wit, of the offense of filing fraudulent income tax returns for the years 1951, 1952 and 1953; that she had been "sentenced to a year and a day of confinement"; that by reason of said facts she had become amenable to disciplinary action by this Court; that she desired to voluntarily submit herself to the jurisdiction of the Court for the purpose of having this Court judicially determine what, if any, disciplinary action should be taken against her because of the matters therein presented, or which might subsequently be presented against her in this Court; and that she waived the issuance and service of any citation against her.

The petition was ordered filed and it was, thereafter, referred to the Advisory Committee to the General Chairman of the Bar Committees of the State of Missouri for such action or recommendation as the Advisory Committee might deem proper. Petitioner was granted a hearing before said Advisory Committee and such evidence was heard as petitioner desired to offer. A transcript of proceedings before the Advisory Committee, including a copy of the indictment, judgment of conviction and certain other exhibits, has been filed, together with the Advisory Committee's report and recommendation, and the cause has been argued and submitted in this Court on the record so made.

The record shows that the indictment against petitioner was returned and filed on January 9, 1958. The indictment was in three counts and charged that petitioner did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by her to the United States of America for the calendar years of 1951, 1952 and 1953 by filing and causing to be filed with the Collector of Internal Revenue at Kansas City, Missouri, false and fraudulent income tax returns for said years, wherein the misrepresentation of her income was as follows:

| Year | Reported Income | Asserted Income | Tax Paid | Alleged Tax Due |
|------|-----------------|-----------------|----------|-----------------|
| 1951 | $1,000.04 | $11,569.82 | $ 81.61 | $3,074.23 |
| 1952 | 1,159.66 | 11,122.81 | 151.04 | 3,175.58 |
| 1953 | 937.23 | 4,565.18 | 74.87 | 927.43 |

Petitioner entered a plea of not guilty to each count of the indictment. The cause was thereafter tried to a jury and she was found guilty, as charged. She was committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of one year and one day on Count I of the Indictment; but imposition of sentence of imprisonment as to Counts II and III was suspended and the respondent was placed on probation for a period of two years, the period of probation to begin upon the expiration of imprisonment imposed on Count I.

Petitioner was released from imprisonment on November 1, 1959, and she will be under probation for a period of two years from that date.

On February 11, 1959, subsequent to her said conviction and prior to the time she began serving her sentence, petitioner was duly notified and did appear before the Advisory Committee while it was conducting an investigation of a charge of unprofessional, unethical and unlawful conduct made against petitioner by reason of the facts charged in the mentioned indictment and her conviction for the offense charged. At the close of that hearing, petitioner was advised that the Committee, on the admitted facts, had found probable cause to believe her to be guilty of misconduct involving moral turpitude; and that a formal charge in a disbarment proceeding would be presented against her, unless she at once discontinued the practice of law and, thereafter, surrendered her license to practice law or tendered herself to the Supreme Court for disciplinary action.

Thereafter, on May 7, 1959, petitioner, as stated, filed her petition in this Court and submitted herself to the jurisdiction of this Court for disciplinary action in the premises. After her petition had been referred to the Advisory Committee, as stated, a hearing thereon was deferred pending petitioner's release from imprisonment, but, after her release, a hearing was had on December 4, 1959, and petitioner appeared

and testified in her own behalf and offered other witnesses.

Petitioner attended the University of Missouri and, later, the Kansas City School of Law, where she obtained her LL.B. degree in 1924. She was admitted to the Bar in this state in 1923 and, later, attended the University of Chicago, Chicago, Illinois, where she received the degree of Bachelor of Philosophy and J.D. (Juris Doctoris). In April, 1927, she returned to Kansas City, Missouri, and she engaged in the practice of law in that city until the mentioned indictment was returned. She has never been married and is now 58 years of age. Except for the income tax charges and conviction, she has not been convicted of any misdemeanor or felony offense. She did receive some eleven "speeding tickets", which she paid. Reference is also made to a zoning violation and an arrest on a charge of disturbance of the peace, but the latter was never tried.

Her law practice has been confined chiefly to office business, probate matters, bankruptcies, collections, the writing of wills and contracts and matters of that kind, substantially all civil practice, with some damage suits and other civil cases. She has practiced very little in the courts during the last ten years. The extent of her income from her law practice appears from work copies of her income tax returns for 1951, 1952 and 1953, as follows: gross income in 1951 as an attorney at law $1,551.-57, net loss $361.02; gross income in 1952 as an attorney at law $1,604.04, net income $64.47; gross income in 1953 as an attorney at law $1,515.84, net income $248.44.

She testified that no funds connected with her law practice were in question in the income tax prosecution. She quoted the Assistant U. S. District Attorney, who tried the case against her, as telling the jury in that case that the "unreported income" involved did not in any way relate to her income from her law practice; and that all of the "unreported income" in question in

the case "relates one way or another to the ownership of real estate."

Petitioner further testified that the Internal Revenue Department began its investigation of her income in 1951 and she voluntarily turned over to the investigating agents from time to time such of her records as they requested. That the first investigation lasted two years and, at the end of that time, it was recommended that she make income tax returns for a friend and client, a Miss Pierce, which she did. That about two years later, two other revenue agents arrived and the investigation was renewed and continued until the indictment was returned in January, 1958.

Concerning the facts involved in the prosecution against her, which resulted in a conviction, she testified that, until the investigation was completed, she did not know that any criminal action was contemplated. She thought they were trying to determine whether she owed any additional income tax; that, ultimately, a figure on a 15-year basis to end the matter was suggested to her as a "package deal", all or none, but it was so out of proportion to anything she could owe or pay and, with interest and penalties added, she didn't attempt it. However, she was never furnished a definite statement and, though requested, she never signed a waiver of the statute of limitations. She then filed some suits in the United States Tax Court to determine her tax liabilities, but these suits are still pending and undisposed of. The Government has not been ready to try them. These cases concern the major portion of the amount of the taxes that she was convicted of evading. The major source of the funds, on which she was charged with evading the payment of taxes, was from the sale of real estate on conditional sales contracts on an installment basis. She claims that she relied on certain Federal cases from other jurisdictions which the Collector of Internal Revenue at Kansas City and the U. S. District Court refused to recognize as authorities. Later, she testified that some rents, interest and exemption claims were involved in the tax investigation. It is apparent that other matters were involved as her testimony before the Advisory Committee shows, as follows: "If it had only been a question of the real estate transactions, such as the sales, I don't think there would ever have been a conviction, because I think that we proved to the satisfaction of everybody that I was justified in that position that I took, that I should not have—I had no tax due until I had recovered my [cost] basis on these properties."

Petitioner further testified that she had made a deposit in excess of $6,000 on the taxes involved in the criminal case, but to be refunded to her in the event the tax cases were decided in her favor. She testified that she never at any time gave any consideration to the question of pleading guilty to the charges against her, since she did not consider herself to be guilty of the charge of fraudulently evading income taxes. After petitioner was convicted, she filed an appeal, but later withdrew it and served some eight months of the term of imprisonment. She gave her age as her reason for withdrawing the appeal, and said that, although she felt she had better than a fifty percent chance to get a reversal, still if she had to serve time, the sooner the better while she was able to take it. She also said that she relied on an alleged recommendation of the trial judge that she serve only four months. She does not want to give up the practice of law, but intends to continue in the practice if and when permitted to do so.

Petitioner offered a number of character witnesses who had known or been associated with her or familiar with her activities for many years, lawyers, teachers, a minister and others, who testified to her good character and to her good reputation for honesty, integrity and morality. While most of them admitted that throughout the years they had heard some vicious rumors and gossip concerning petitioner's morality they considered these rumors to be absolute-

ly false and mere gossip, wholly unfounded and unsupported by facts. They also indicated that people generally, who were acquainted with petitioner or had any dealing with her, so regarded these rumors; and that they did not affect her activities in the practice of law, in her church, or in community activities. Petitioner also testified that the mentioned rumors and gossip about her had no factual background or basis. Petitioner has been a member of the Women's Bar Association of Kansas City for many years.

The Advisory Committee concluded its report with the statement that: "After careful consideration of the record in this case, it is the unanimous opinion of the Advisory Committee that petitioner should no longer be entrusted with the duties and responsibilities belonging to the office of an attorney; that petitioner, by failing to maintain her moral character and honesty, has rendered herself an unfit person to further engage in the practice of law, and can no longer be certified by this Court as possessing the qualifications of an attorney." The Committee recommended that petitioner "be disbarred from the practice of law in Missouri, and her name stricken from the roll of attorneys in this state. In the alternative, * * * should this Court deem a suspension, rather than disbarment, adequate to protect the public interest, that any such suspension should be of indefinite duration with leave granted petitioner to apply for reinstatement after the expiration of a substantial period to be fixed by the Court upon a showing by petitioner that she is then a person of good moral character, and fully qualified to be licensed as a member of the Bar of Missouri."

The Advisory Committee's report and recommendation rests essentially upon the fact that petitioner was charged and convicted of willfully and knowingly attempting to defeat and evade Federal income taxes by the filing of false and fraudulent income tax returns. Reference is made to particular facts alleged in the information and established by the conviction which tend to show that for the three years in question, 1951, 1952 and 1953, petitioner reported an income of $3,096.93 instead of her actual income as alleged and proved by the United States to be $27,257.81, a deficiency of unreported income in the sum of $24,160.88, approximately eight times as much as her reported income. Reference is also made to the fact that "petitioner reported and paid Federal income taxes totalling only $307.52, whereas her actual tax should have been $7,177.24. Thus, she reported and paid taxes representing less than 5% of the taxes actually due."

Petitioner's sole contention in this Court is that, "although she has admittedly been convicted of income tax evasion in the Federal court, the extenuating and mitigating circumstances involved are so great as to make total disbarment much too harsh in this case." In support of this contention she insists that she enjoyed a good reputation with the Bar and the public and has practiced law without incident for approximately 30 years prior to her conviction; that none of the charges against her dealt with her activities in the practice of the law; that on her own volition she has refrained from practicing law since she was indicted; that she plead not guilty to the charges against her, stood trial and has at all times maintained her innocence; that she willingly permitted the Internal Revenue Agents to examine her records and kept no false records; that she has made a deposit in the tax cases of a sum in excess of the amounts claimed in the criminal proceeding, even though a final decision as to her indebtedness has not been determined by the United States Tax Court; and that she has voluntarily submitted herself to this Court for disciplinary action and has been very cooperative and frank in her testimony before the Advisory Committee.

No contested issue of law is presented for decision. Petitioner, a licensed attorney, recognizes that, as a result of her conviction of a felony, to wit, on the charge of

willfully and knowingly attempting to evade and defeat a large part of the income tax due and owing by her to the United States of America for the years 1951, 1952 and 1953 by filing false and fraudulent income tax returns, she is subject to disciplinary action in this Court. Her sole contention is that a suspension of her license to practice law in this state for a limited period should be entirely sufficient under the particular facts of her case.

■ It has been stated many times that the purpose of such a disciplinary action is not to punish the attorney, but to preserve the courts from the ministration of persons unfit to serve therein as attorneys. In re Burrus, 364 Mo. 22, 258 S.W.2d 625, 627; In re Landon, Mo.Sup., 319 S.W.2d 553, 558; In re Canzoneri, Mo.Sup., 334 S.W.2d 30, 34; In re Graves, 347 Mo. 49, 146 S.W. 2d 555, 557; In re Ellis, 359 Mo. 231, 221 S.W.2d 139, 142.

■ The charges made in the indictment, the jury verdict, the judgment and sentence imposed upon petitioner, as well as the contents of the work copies of her income tax returns for the mentioned years are not open to question. These facts are admitted, and the case for suspension or disbarment rests upon these facts. We are not called upon to re-try the criminal case. The credibility, weight and value of petitioner's testimony and the oral testimony of her witnesses before the Advisory Committee, as well as the determination of all fact issues necessary to a decision in this case, are for this Court.

In determining whether petitioner has been guilty of such misconduct that she should no longer be entrusted with duties and responsibilities belonging to the office, we must keep in mind the rule stated in the Canzoneri case, supra, 334 S.W.2d 30, 33, as follows:

"The primary duty of every lawyer is to keep his own conduct above reproach (certainly above the minimum standards of the criminal law) because improper conduct of even a few persons lowers the prestige of the profession and its effectiveness in performing its duties and responsibilities. Thus the honesty of petitioner in the performance of his obligations to the United States Government, in compliance with its laws, is a most important issue and the question of willfulness in understating his income naturally must be considered. That is why the cases have so generally held that moral turpitude is involved in such an offense."

The law is well settled in this state that the offense of which petitioner was convicted does involve moral turpitude and it is apparent that petitioner's conduct, as evidenced by the charge and conviction, was fraudulent, and her intent was to deceive and defraud and to avoid the payment of income taxes. While petitioner points out that some other courts have reached a different conclusion on the issue of moral turpitude under similar facts, we are not here concerned with those decisions. See Baker v. Miller, 236 Ind. 20, 138 N.E.2d 145, and cases mentioned in 59 A.L.R.2d 1400.

It is not particularly important to any of the issues here that the fraudulent conduct in question was not directly connected with petitioner's practice of the law, although in the Landon case, supra, the court said that "The fact that petitioner's 'derelictions were committed in his personal capacity as a tax-subject citizen rather than in his professional capacity has some bearing upon the ultimate issue of his fitness to continue in the practice.' "

"Dereliction of an attorney in his personal capacity which involves moral turpitude or any dereliction involving honesty and fair dealing may be made the basis of disciplinary proceedings." In re Moon, Mo. Sup., 310 S.W.2d 935, 939; In re Landon, supra, 319 S.W.2d loc. cit. 558; In re Canzoneri, supra, 334 S.W.2d 30, 33; In re H—— S——, 229 Mo.App. 44, 69 S.W.2d 325, 327; 7 C.J.S. Attorney and Client §

19, p. 733; 5 Am.Jur. 426, Attorneys at Law, Sec. 276.

It is also well settled that, "The fact that petitioner has long borne a good reputation for honesty, morality and professional integrity is no defense in this proceeding, but we may consider it as determining what action should be taken under the facts and circumstances shown. In re Moon, 310 S. W.2d 935, 938, supra;". In re Landon, supra.

While it is true that petitioner submitted herself to the jurisdiction of this Court in this disciplinary action and that a citation or charge was not filed against her, nevertheless the record shows that at the close of a prior hearing before the Advisory Committee to determine the question of probable cause for a disbarment proceeding, she was advised that if she didn't surrender her license, or quit practicing and present herself in this Court for disciplinary action a disbarment proceeding would be filed.

While petitioner attempts to make much of her plea of "not guilty" and of her continued assertion of innocence, it is clear from her own testimony that more was involved in the tax investigation than the issues in the criminal case and the question of tax law applicable to the matter of installment sales of real estate. It also appears that although requested to waive the statute of limitations she refused to do so.

Petitioner has also called our attention to the fact that the cases she has filed in the Tax Court to determine her liability for income tax, a part of which was within the issues in the criminal case, have not been tried or decided. We are not here concerned with the ultimate outcome of those cases, but need only determine whether, on the admitted facts in this case, petitioner should continue to be entrusted with the duties and responsibilities belonging to the office of an attorney. In re Canzoneri, supra, 334 S.W.2d 30, 33.

Each case of this type must be decided upon its own peculiar facts. No particular defensive matter here urged is decisive under the facts of this case. The whole record must be considered.

From a careful review and consideration of the record in this case and of all facts favorable and unfavorable, we think the ends of justice will be best served by an indefinite suspension of petitioner from the practice of law and it is ordered that Martha McLendon be, and she hereby is, suspended and prohibited from engaging in the practice of law in Missouri until further order of this Court and that she be permitted to apply for reinstatement at any time after the expiration of three years from the date of the adoption of this opinion upon a showing that she is then a person of good moral character and fully qualified to be licensed as a member of the Bar of Missouri.

All concur.