In re James L. McMULLIN, Petitioner.

No. 49700.

Supreme Court of Missouri,

En Banc.

June 4, 1963.

J. K. Owens, Kansas City, for petitioner.

Douglas Stripp, Kansas City, for Advisory Committee of the Missouri Bar.

STORCKMAN, Judge.

This is an original proceeding to determine what disciplinary action should be taken against the petitioner, James L. Mc-Mullin, a duly licensed attorney at law practicing in Kansas City, Missouri.

On August 10, 1962, Mr. McMullin filed his petition in this court stating that on June 15, 1962, an information was filed against him in the District Court of the United States for the Western District of Missouri charging him in five counts with willful failure to file federal income tax returns for the five years from 1956 to 1960; that the offense charged was a misdemeanor under the statutes of the United States; that on July 17, 1962, he entered a plea of guilty to the first two counts of the information, and on July 29 was sentenced on these counts to three months' imprisonment in the United States Medical Center in Springfield; that the other three counts of the information were dismissed. The petitioner voluntarily submitted himself to the jurisdiction of this court for the purpose of having the court judicially determine what, if any, disciplinary action should be taken against him.

The petitioner's application was referred to the Advisory Committee of the Missouri Bar Administration for investigation and report. The Advisory Committee conducted hearings at which the petitioner appeared and testified. He was also given the opportunity to produce other witnesses. On March 1, 1963, the Advisory Committee filed its report and recommendation. The petitioner filed a response to the report of the Advisory Committee in which he agreed that the facts set out in the report of the Advisory Committee were true with minor exceptions which will be noted in the course of the opinion.

The supreme court has original jurisdiction of matters pertaining to the disciplining of members of the Bar and may suspend or disbar a member in a proper case. In re Foley, Mo., 364 S.W. 2d 1[1].

James L. McMullin, now 36 years of age, was born in Parma, New Madrid County, Missouri. He attended elementary

school in New Madrid County and Saline and Dodge City, Kansas, and attended high school and graduated from Center High School in Kansas City. He attended the University of Kansas City and received an A.B. degree in English and an L.L.B. degree in Law in 1951. He was admitted to practice in Missouri on January 21, 1951. After completing his service in the Korean War, he began the practice of law in Kansas City and for three or four years was an associate in the office of William R. Ross, an attorney of admitted integrity. Thereafter he practiced by himself in Kansas City, renting office room in suites with other lawyers.

Mr. McMullin served in the United States Navy in World War II as a 3d Class Petty Officer. In the Korean War he was commissioned as a 2d Lieutenant in the Marine Corps, then promoted to 1st Lieutenant and Captain and thereafter was a Major in the Marine Corps Reserve. For nine of the seventeen months that he was in Korea, he served in an artillery outfit and the rest of the time he was a prosecutor for the Government trying general court martial cases. He had eighteen years service in the Reserve. On September 8, 1962, while Mr. McMullin was confined at the U. S. Medical Center in Springfield, he was dropped from the rolls of the Marine Corps Reserve on order of the Secretary of the U. S. Navy. Dropping from the rolls effects complete severance of the individual concerned from the Naval service; no certificate of discharge is issued upon separation by dropping from the rolls. At the hearing held in this matter on November 29, 1962, Mr. McMullin testified that he held a Major's commission in the Marine Corps Reserve. In his response to the Committee's report, he states that he had no knowledge that he had been dropped from the Marine Corps Reserve when he testified at the hearing and was not so notified until sometime in December 1962.

Mr. McMullin was married in 1948, has a son 8 years of age, a daughter 6 years of age, and a wife, who is 34 years of age. He has been active in church work in Kansas City and is a member of the Board of Deacons of his church. He has taught Sunday School classes at his church for the past five years and still teaches a class. He and his wife are active and former officers in a group of young people in their church and he has been active in Boy Scout work.

On July 27, 1962, the Honorable Richard M. Duncan, Judge of the United States District Court for the Western District of Missouri, upon petitioner's plea of guilty to Counts I and II, being his failure to make a federal income tax return for the years 1956 and 1957, sentenced him to serve a term of three months on each count, such sentences to run concurrently, in the United States Medical Center at Springfield, Missouri, to begin serving said three months sentence on August 5, 1962. He served said sentence with the exception of nine days given him for good behavior while serving his sentence. At the time of sentencing the petitioner, Judge Duncan made a statement of which the following is a part:

"Now gentlemen, the Court has before it the pre-sentence report, which has not revealed anything particularly that the Court did not already know. This young man has practiced here and has devoted his practice exclusively to the criminal field. He has expressed a preference for that field. But I think he has violated, not only from my observation, but from the report that has come to me, the pre-sentence report, and things we must know, I think he has probably violated the three most important rules of a criminal lawyer. In the first place, a lawyer who represents criminals does not stand as high in the community as some other members of the profession. That is a matter of common knowledge, and for that reason when he does represent criminals, he ought to be well paid for it, better than the ordinary lawyer, to make up for that situation, if that is his chosen line of work. I do not believe that this Defendant did that.

"The second is that he ought never to become an associate of the criminals he represents, because when he does that he places himself pretty much on the same plane as those he represents. There is certainly nothing dishonorable about a man representing those people charged with crime, the law gives them that right, and the profession requires it in most instances, but to put himself on the same plane is not a good thing.

"I do not like to say this gentlemen, but it is a fact. It is a matter I feel I should say, that for a considerable period of time there has been a feeling among a good many people, and among Courts as a matter of fact, that this Defendant's ideas and conceptions of the practice of law have not been consistent with the high ideals of the great profession to which he belongs; that he, in a good many instances, has been guilty of acts and conduct with respect to his practice that have not been looked upon with favor by members of his own profession, and that is not a matter for this Court to be concerned with. I simply make that statement, and unless he changes his entire conception of the duties and the responsibilities of a lawyer to himself, and to his profession and to the community, it is my opinion he should never again be permitted to practice before this Court, regardless of what his future may be. It may be necessary to seek a livelihood in other fields.

Mr. McMullin readily assumed the blame for his income tax troubles. His explanation was that he did not have the money to pay his income taxes when the returns were due and, through the accountant who customarily prepared his returns, he obtained extensions of time for filing the returns. Photostatic copies of the extension for each year involved were attached to the report as exhibits. He testified that he believed that by obtaining extensions he would not be guilty of criminal violation although he knew that eventually he would have to pay the tax with interest. He further testified that the Internal Revenue Service had gone over his books and presented him with a statement showing his taxes to be about $6,000 for the five years.

Two previous complaints had been made against the petitioner on which the Advisory Committee held informal hearings in September 1960. Mr. McMullin was on a tour of duty with the United States Marine Corps Reserve when the witnesses were examined, but at a later date he testified before the Committee, gave his version of the occurrences, and was interrogated by members of the Committee. One complaint involved his retainer to secure a reduction in the sentence of a man who had pleaded guilty of charges of bank robbery and was sentenced by United States District Judge R. Jasper Smith to imprisonment for a term of twenty-five years. The defendant was represented by other counsel when he pleaded guilty and was sentenced. The convict's wife employed McMullin and paid him a fee of $380 to undertake to get a reduction in sentence because the defendant had a previous good record and was the sole support of the wife and four children. The wife's testimony at the informal hearing tended to show that McMullin had done nothing and had avoided numerous telephone calls. In his testimony later, the petitioner undertook to recount what he had done which included filing before Judge Smith a "MOTION TO REDUCE AND CORRECT EXCESSIVE SENTENCE". A copy of the motion was introduced as an exhibit. The motion was overruled and McMullin considered an appeal to the U. S. Court of Appeals but before this was done Judge Smith, of the court's own motion, amended the sentence so as to make the convict eligible for parole after five years, and no appeal was taken. The Committee suggested that McMullin get in touch with the convict's wife and explain the situation to her. At the final hearing in this matter the petitioner reported that he had done so and had refunded to her a portion of the fee. This

matter was apparently satisfactorily concluded.

The other complaint included at the informal hearing involved Mr. McMullin's conduct in a criminal case pending in the Circuit Court of Jackson County which received considerable newspaper publicity due to the fact that two notorious persons were charged with attempting to kill a witness. The petitioner represented the defendants and took a brother of one of the defendants to a deposition hearing in the apparent attempt to mislead the prosecuting witness into identifying the wrong person. The presence of the imposter was discovered before the deposition began, but his presence was in violation of an order made by Judge Duvaul P. Strother who had specified the persons that could be in attendance at the taking of the depositions. The petitioner claimed that he read the order hurriedly and did not realize at the time that he was doing anything wrong in taking the defendant's brother to the hearing. The Advisory Committee left it to McMullin to decide what amends, if any, he should make to Judge Strother. After appearing before the Committee, however, he withdrew from the defense of that case. No further hearings were held by the Committee on these two matters although they were still pending at the time of the petitioner's conviction in the U. S. District Court. The transcript of these previous hearings were made a part of the record herein. Judge Strother wrote a letter on behalf of the petitioner which is before us as an exhibit in this matter and which solicits leniency for Mr. McMullin and states, inter alia, that the petitioner "should not be punished further by having his license withdrawn".

Petitioner's counsel of record was otherwise engaged and did not appear at the hearing of this matter held on November 29, 1962. Mr. McMullin was the only witness and when questioned by Committee members regarding various "rumors" of improper associations and misconduct on his part he answered with apparent frankness and sometimes volunteered information beyond the scope of the interrogation. He stated that he practiced a lot of criminal law, tried a few divorce cases and did some probate work. One of the Committee members observed that McMullin was "obviously a bright young man" and, in the course of interrogation as to how he "got off on the wrong track", developed that the petitioner after he had been in practice for a year or two felt that he needed trial experience and at his request the judges of the circuit court appointed him to defend indigent persons accused of crime. He was trying between 20 and 30 cases a year, some of which were given newspaper publicity. As a result of his victories more criminal cases came to him than civil and he took them. He represented "dozens" of prostitutes who were prosecuted in City Court under an ordinance which made a conviction almost impossible. These victories attracted other such cases. He denied having had sexual relations with any of these prostitutes or procuring others to do so, but admitted that on one occasion, at the request of two acquaintances, he had telephoned two prostitutes for them. He further denied that he had any part in the criminal activities of his clients.

He admitted that he had gone in the nighttime to taverns and restaurants frequented by persons he was representing in criminal cases; that his purpose in doing so was to collect fees or confer with clients; that he undertook to have them come to his office but it was more convenient for his clients to see him at the other places and he yielded to their insistence. In one or two instances he went to their homes. He testified that his association with "these underworld and criminal characters" was that of attorney and client; that seeing them at night might appear to be social, but it was not. His wife often accompanied him on these trips; sometimes she went in with him and at other times she sat in the car.

Mr. McMullin further testified that he had not practiced law since August 1, 1962, and since his release from the prison at Springfield he has been working as an adjustor for an insurance company. He does not intend to practice any more criminal law and has an opportunity to defend civil cases for insurance companies. His wife has also taken employment and his mother who lives with them takes care of the children.

Mr. McMullin filed with the Committee letters from four circuit judges in Jackson County, one municipal court judge, two magistrates, five members of the Bar, a Sunday School teacher, and the Pastor of his church. All of these letters indicate that his conduct and moral standing are good. Some of the letters urge leniency for him.

The report of the Advisory Committee states that: "After careful consideration of the record in this case, it is the unanimous opinion of the Advisory Committee that Petitioner has violated Section 4.47 of the Rules of this Court [42 V.A.M.S.] by having committed an offense against the laws of the United States of America and the State of Missouri and that such offense involves moral turpitude." The recommendation of the Committee is "that James L. McMullin be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys in this state" or, in the alternative, "should this Court deem a suspension, rather than disbarment, adequate to protect the public interest, that any such suspension should be of indefinite duration with leave granted petitioner to apply for reinstatement after the expiration of a substantial period to be fixed by the Court upon a showing by petitioner that he is then a person of good moral character and fully qualified to be licensed as a member of the Bar of Missouri."

As stated by this court in the case of In re Moon, Mo., 310 S.W.2d 935, 938[3]: "In cases of this nature, it is always a difficult problem to determine the extent to which an attorney should be disciplined. In 7 C.J.S. Attorney and Client § 38, p. 806 it is stated that 'In arriving at the punishment to be imposed, precedents are of little aid, and each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession. Disbarment will be decreed only when the court is convinced of its necessity for the protection of the profession, the courts, and the public, and a removal from the bar should not be decreed where any punishment less severe, such as reprimand, temporary suspension, or fine, would accomplish the end desired.'"

We have concluded that the alternative recommendation of the Advisory Committee should be adopted; that is, the petitioner should be suspended indefinitely with leave to apply for reinstatement. See In re Foley, Mo., 364 S.W.2d 1; In re McLendon, Mo., 337 S.W.2d 56; In re Canzoneri, Mo., 334 S.W.2d 30; In re Landon, Mo., 319 S.W.2d 553, and In re Moon, Mo., 310 S.W.2d 935.

The petitioner has admittedly been convicted of a federal offense which, although a misdemeanor, involves moral turpitude. Other professional misconduct has not been proven although the conduct of his criminal practice was extremely indiscreet and inept. The defense of persons accused of crime is encouraged, but the conduct of a criminal practice in the manner that the petitioner apparently did is reprehensible and should be condemned. A lawyer who habitually associates with crime-charged clients in their haunts and homes exposes himself to the risk of becoming enmeshed in their criminal enterprises, or at least of being so considered in public opinion. It is wholly unnecessary to the proper practice of criminal law and

brings both the lawyer and his profession into disrepute. Unless the petitioner in due course demonstrates that he has the will and the ability to avoid in the future the mistakes he has made in the past he may never become entitled to be reinstated in the practice of law.

It is ordered that the petitioner, James L. McMullin, be suspended indefinitely from the practice of law with leave to apply for reinstatement after the expiration of a period of three years from the date of the rendition of this opinion upon a showing that he is then a person of good moral character and fully qualified to be licensed as a member of the Bar of Missouri.

All concur.